John FARR Jr. *v.* Jackye FARR

CA 04-409                                    201 S.W.3d 417

Court of Appeals of Arkansas
Opinion delivered January 19, 2005

*Orvin Foster*, for appellant.

*David Maddox*, for appellee.

WENDELL L. GRIFFEN, Judge. This appeal and cross-appeal raise three issues concerning valuation and division of a marital estate. We affirm on direct appeal and reverse and remand on cross-appeal.

The parties married on July 26, 1991, and separated in April 2002. Appellant John Farr, Jr., (husband) filed his complaint for divorce on April 8, 2002. Husband sought an equitable division of the marital property. Appellee Jackye Farr (wife) filed an answer and a counterclaim for separate maintenance. Wife later dismissed her counterclaim.

At trial, husband testified that the parties were living in Dallas at the time of their marriage where he owned a business, which was sold in 1998 for $500,000, together with $66,000 in debt forgiveness. He stated that the $500,000 was received in two $250,000 payments, one in 1998 and another in 1999. He stated that he gave ten percent of the proceeds to his church as a tithe, that the parties purchased two certificates of deposit (CDs) of $100,000 each, that $96,000 was used to pay off the debt on the marital home in Mena, and that other debts were paid. He also testified that, from the second CD, he took $70,000 back to Texas, gave $5,000 to wife, loaned $20,000 to Darrell Ellison, and gave his son Dennis $10,000 to use as a down payment for the purchase of a home in Mena. He also stated that he purchased a $40,000 home in McKinney, Texas, which was later sold to Dennis. He stated that Dennis owes $32,500 and that the debt is being repaid at the rate of $1,500 per month. He also stated that the $40,000 used to purchase the house came from the $70,000 he stated he took to Texas. Husband testified that Dennis is the owner of the house in Mena and that, when it is sold, he will receive his $10,000 back.

Husband stated that he made various other loans totaling $40,000, some of which were being repaid. He testified that he had between $12,000 and $13,000 in the bank. He stated that his income was $1,500 per month from social security and a $200 per month payment from Darrell Ellison on a loan. He also stated that he receives payments from his sons for repayment of an investment in a Texas business venture. He stated that he had no other income except for a $67,500 settlement of a personal injury case and the

$500,000 received from the sale of his business. He also stated that he spent the $67,500 from the personal injury settlement. The $67,500 had been placed in a CD in Texas. In his answers to interrogatories, husband admitted that $50,000 was being held in an account in Dennis Farr's name in Texas. The interrogatory answer listed the sale of husband's business as the source of these funds. However, in his trial testimony, husband stated that the funds came from the cancellation of an insurance policy. He stated that he has an individual retirement account (IRA) with a present value of $4,700. Husband cashed in a life insurance policy and received $55,383, which was placed in his separate account. He admitted that he received $155,000 from cashing a CD and an insurance policy in November 2001 but stated that he spent the money paying bills. He stated he borrowed $30,000 from a cousin to purchase the house in Mena but that there was no note. He states that he pays interest only on the $30,000 loan.

Husband also testified that he made an investment with his sons William and Dennis in a business in South Padre Island, Texas. The investment was for $125,000. He stated that he paid $66,000 to settle a lawsuit with the seller, some of which could have been drawn from joint credit cards. He admitted that all credit card payments were made from a joint account. He admitted that, in his deposition, he stated that his sons owed $92,000 and were current on their payments. He stated that wife had prepared promissory notes but the sons had refused to sign and there were no other notes for the debt. He stated that his agreement with Dennis was that the parties would be allowed to take the loss from the business on their taxes and that Dennis would repay the debt as he could. He stated that one son paid $1,040 per month while the other paid $1,308 per month. He stated that he had received all payments since he filed for the divorce.

During her testimony, wife requested that the trial court award her one-half of the funds husband spent in making the various loans and paid on the Texas business venture. She admitted that she did not own any stock in husband's business but nonetheless asserted that she was entitled to one-half of the money received from its sale because that money was placed in a joint account or in both parties' names. She also admitted that the parties purchased two $100,000 CDs with funds from the sale of the business. She stated that she signed documents allowing the CDs to be cashed and the funds given to husband. Wife testified that the $66,000

husband used to settle the lawsuit over the Texas business came from his CD. She also stated that she was not aware until after the fact that husband had invested in the Texas venture with his sons. She admitted that she knew about some of the loans husband made but denied that they were being repaid. She also stated that the money for the Texas venture was a loan, with the funds coming from a joint account. She stated that the balance owed included the $92,000, the $58,000 from credit cards, and payments on a boat used in that business. Wife stated that husband was receiving money from his sons on that debt. She also stated that she drew up promissory notes for the repayment of the debt but the sons refused to sign.

Husband's son Dennis testified that he obtained money from husband for the start up of a business venture in South Padre Island, Texas. He admitted that husband co-signed the note. Dennis did not recall how much money his father gave him or the business to operate but admitted that the last sum was $66,000 for settlement of a lawsuit. He stated that the initial money came from checks drawn on credit cards and was used only for the start up of the business, not for continuing operations. Dennis denied telling his father that he was obligated to repay the debt for the loss husband incurred in the business but also stated that he felt a moral need to repay the money because his father did not have a present income or a job. He stated that he has a specific amount that he paid and that he thinks he owed approximately $30,000. Dennis stated that, contrary to husband's testimony, he did not believe that he and his brother owed $92,000. He stated that any payments to his father were strictly voluntary and that he reported the transaction on his tax returns as a consulting fee. He admitted that he refused to sign promissory notes drawn up by his wife because he did not feel like he owed the money.

The trial court issued a letter opinion, in which it found that the marital assets should be divided equally. The parties' MCI stock, marital residence, and other real property were ordered sold and the proceeds divided. The court also awarded vehicles and other items of personal property. Among the remaining items considered in making a property division were money held by husband's son Dennis in Texas, $50,000; husband's loan to his son Dennis, $40,000; husband's loan to Darrell Ellison, $20,000; husband's loan to David Henry, $10,500; husband's loan to James

Morris, $5,000; husband's IRA, $4,700; wife's IRA, $14,000; the cash value of wife's life insurance, $52,000; and payments by husband's sons, $35,000.[1]

The court found that husband's investment in a business operated by his sons was marital property because the money came from a joint account or from credit cards repaid with funds from a joint account. The court found that there was a balance owed by the sons in the amount of $92,000. The court declined to make an award of this account receivable because one of the sons testified that the money would not be repaid if wife was awarded one-half. After the letter opinion was received but prior to entry of a decree, husband filed a "Motion for Rehearing," asserting that the trial court incorrectly considered the $50,000 held by husband's son Dennis and the $40,000 loan to Dennis Farr as separate items because, according to husband, those items were one and the same. Husband also argued that the $35,000 repayment by the sons was used by the parties for joint purposes. The trial court denied the motion, and a final decree was entered in accordance with the letter opinion. This appeal and cross-appeal timely followed.

Husband raises two points on appeal. First, he argues the trial court erred in determining that the $50,000 held by husband's son Dennis in Texas and a $40,000 loan to Dennis Farr were separate items of property to be divided equally. Second, husband contends that the trial court's finding that husband's sons had repaid $35,000 during the parties' separation was clearly erroneous. Wife raises one point on cross-appeal: that the trial court erred in not awarding her a portion of the $92,000 owed by husband's sons on the investment in the failed business venture.

With respect to the division of property in a divorce case, we review the trial judge's findings of fact and affirm them unless they are clearly erroneous. *Skokos v. Skokos*, 344 Ark. 420, 40 S.W.3d 768 (2001). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Huffman v. Fisher*, 343 Ark. 737, 38 S.W.3d 327 (2001). In order to demonstrate that the trial court's ruling was erroneous, an appellant must show that the trial court abused its discretion by making a decision that was arbitrary or groundless. *Skokos v. Skokos, supra.*

---

[1] Wife was allowed to keep her IRA and her insurance policy. She was awarded $49,650 from the sale of the real property to pay for her portion of these funds.

■ For his first point, husband argues that the trial court erred in finding that $50,000 held by Dennis Farr in Texas and a $40,000 loan to Dennis Farr were separate items of property. Husband argues that the two items are the same and, therefore, by giving wife half of each item, she was given more than she was entitled. Husband's testimony on this point is somewhat confusing. He testified that he cashed a $55,383 insurance policy, placing the money in a separate account in Dennis's name. He did not testify that it was from the $70,000 he testified was carried to Texas. He was questioned about his answers to the interrogatories that stated that the money in the account in the son's name came from the sale of his business. Husband also testified that, from the second CD, he gave Dennis $40,000 to purchase a house in McKinney, Texas, from the $70,000 he took to Texas. The issue becomes one of credibility for the trial court, who was not required to believe husband's testimony about the source of the money or that it had all been spent. Findings of fact shall not be set aside unless clearly erroneous (clearly against the preponderance of the evidence), giving due regard to the superior opportunity of the trial court to judge the credibility of the witnesses. *Lee v. Daniel*, 350 Ark. 466, 91 S.W.3d 464 (2002). We hold that the trial court's finding was not clearly erroneous; thus, we affirm on this point.

■ For his second point, husband argues that the trial court erred in finding that husband's sons repaid $35,000 during the parties' separation pursuant to a valid agreement. Husband has misunderstood the trial court's decision. The trial court did not find there was a valid agreement for repayment of the debt by the sons, noting that there was no written agreement regarding repayment. The trial court was correct in dividing this fund. There is a statutory presumption that all property acquired during a marriage is marital property. *McKay v. McKay*, 340 Ark. 171, 8 S.W.3d 525 (2000); *McDermott v. McDermott*, 336 Ark. 557, 986 S.W.2d 843 (1999); *Layman v. Layman*, 292 Ark. 539, 731 S.W.2d 771 (1987); *Boggs v. Boggs*, 26 Ark. App. 188, 761 S.W.2d 956 (1988). Husband does not argue that he overcame the presumption. Instead, he argues that the money received from his sons was a gift because there was no legal obligation for the sons to repay the debt. However, husband did not make the gift argument to the trial court. This court will not consider arguments raised for the first time on appeal. *Burke v. Strange*, 335 Ark. 328, 983 S.W.2d 389 (1998).

■ Husband also argues that wife offered no proof of the amount actually received and that the sum should be reduced to the amount actually received. However, husband testified that he received payments of $1,040 from one son and $1,308 from the other son every month since the divorce complaint was filed in April 2002. If all of the payments between the time of the filing the complaint and the trial in June 2003 are totaled, the sum is $35,220 ($2,348 x 15 months = $35,220). We cannot say that the trial court was clearly erroneous in awarding wife half of $35,000 and affirm on this point.

On cross-appeal, wife argues that the trial court erred by not awarding her a portion of the $92,000 owed by husband's sons from the investment in the failed business venture. The trial court found that the investment in the Texas venture was marital property because the money for the venture came from joint accounts and awarded wife a one-half interest in the $35,000 paid on this debt during the parties' separation. The court, after considering Dennis Farr's statement concerning repayment, concluded that the receivable did not have value because of the uncertainty of collection.

■ Accounts receivable are an asset subject to division upon divorce, with their net present value to be divided between the spouses. See Meeks v. Meeks, 290 Ark. 563, 721 S.W.2d 653 (1986); Johnson v. Cotton-Johnson, 88 Ark. App. 67, 194 S.W.3d 806 (2004). We recognize that a trial judge has broad powers to distribute property in order to achieve a division of property that is fair and equitable under the circumstances. Keathley v. Keathley, 76 Ark. App. 150, 61 S.W.3d 219 (2001). Here, the trial court's treatment of this asset is inconsistent in that the payments already made on such indebtedness are equally divided while the division of future payments is denied because of enmity between wife and Dennis Farr. However, it is not equitable to wife to have the classification of such an asset turn on such a factor. Further, the fact that a receivable may not be collectable reduces its net value but does not make it non-marital property. We reverse and remand on this issue for further proceedings consistent with this opinion.

Affirmed on direct appeal; reversed and remanded on cross-appeal.

VAUGHT and CRABTREE, JJ., agree.