

Cite as 2015 Ark. App. 131

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-14-901

|  |  |
|---|---|
| JONATHAN LIVELY<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF<br>HUMAN SERVICES and MINOR<br>CHILDREN<br><br>APPELLEES | **Opinion Delivered** February 25, 2015<br><br>APPEAL FROM THE WASHINGTON<br>COUNTY CIRCUIT COURT<br>[No. JV 2013-213-3]<br><br>HONORABLE STACEY ZIMMERMAN,<br>JUDGE<br><br>REVERSED and REMANDED |

## LARRY D. VAUGHT, Judge

Jonathan Lively appeals the Washington County Circuit Court's termination of his parental rights to his two children, K.L.1 and K.L.2. He argues that (1) he was denied due process because he was not properly served with the dependency-neglect adjudication petition and notice of the hearing, (2) there was insufficient evidence to support any statutory grounds for terminating his parental rights, and (3) the court erred in determining that termination would be in the children's best interest. We find no error as to Jonathan's first two points but agree that the circuit court erred in determining that the termination was in the children's best interest. We reverse and remand.

Jonathan Lively is a military veteran who, since returning from combat in Iraq, has suffered from post-traumatic-stress disorder ("PTSD") and struggled with substance abuse. On March 21, 2013, Arkansas Department of Human Services ("DHS") filed a petition for ex parte emergency order requesting a "less than custody" order placing Jonathan's two children in the

SLIP OPINION

custody of his wife and their biological mother, Kayla Lively. The court granted the request based upon an affidavit by a DHS investigator, which contained Kayla's allegations that Jonathan had a history of substance abuse, had sexually abused their daughter (although the affidavit noted that these allegations had been found to be unsubstantiated), and had been violent toward Kayla. A probable-cause hearing was held on March 27, 2013, at which Jonathan was not present. The court found probable cause and issued a no-contact order based upon findings that Jonathan used drugs, had been violent, and suffered from PTSD and mental-health issues. The court appointed an attorney for Jonathan and ordered DHS to serve him. A dependency/neglect adjudication hearing was held on May 8, 2013. Jonathan did not appear at the hearing. His appointed attorney appeared and represented to the court that Jonathan was undergoing drug-rehabilitation treatment at the VA hospital. Based upon a stipulation by the parties, the children were adjudicated dependent/neglected due to Jonathan's on-going drug use, his mental health and PTSD, and domestic violence in the home. The court again ordered that Jonathan have no contact with the children but anticipated that he would be able to exercise supervised visitation after being discharged from the rehabilitation program and completing three random drug screenings.

Kayla brought the children to visit Jonathan at the VA on two occasions, and both visits went well and were without incident. Jonathan graduated from the rehabilitation program on July 4, 2013. There is a factual dispute about where Jonathan lived upon leaving the program. He testified that he lived with Kayla and the children until August 2013, but Kayla denied that he lived there. In August 2013, Jonathan relapsed into substance abuse and returned to the VA

for rehabilitation services. After leaving the VA for the second time, Jonathan went to live with his parents and officially separated from Kayla.

Jonathan contacted DHS and attempted to exercise visitation with his children. DHS gave Jonathan a drug test at his request, which was negative, but two subsequent tests were positive. In September 2013, Jonathan was arrested for public intoxication. At a review hearing on October 2, 2013, the court again ordered that Jonathan could have no contact with the children.

At a permanency-planning hearing on January 15, 2014, the court ordered the attorney ad litem to file a petition to terminate Jonathan's parental rights. The court also ordered Jonathan to pay child support and ordered that he have no contact with the children. The petition for termination of parental rights was filed on February 13, 2014. In support of termination, the petition alleged that (1) Jonathan had not had custody of the children for twelve months; (2) despite meaningful effort by DHS, the conditions which caused removal still existed; (3) Jonathan willfully failed to provide significant material support in accordance with his means; (4) he failed to maintain meaningful contact with the children, (5) he was mentally unstable and suffered from PTSD and other mental-health issues; (6) he had a history of domestic assault; (7) he continued to abuse methamphetamine and alcohol; (8) the children were suffering as a result of Jonathan's unpredictable and violent behavior; (9) and the children were highly adoptable.

The court held a termination hearing on June 26, 2014, and terminated Jonathan's parental rights based upon findings that the children were adoptable; Jonathan had not had custody for more than a year; Jonathan had not remedied the conditions that brought the

children into DHS care; Jonathan continued to use illegal drugs; Jonathan still had unstable mental-health issues; there was domestic violence in the home, to which the children had been subjected; Jonathan willfully failed to provide significant support; Jonathan had not maintained meaningful contact with the children; and Jonathan had been sentenced to 120 months' incarceration in the Arkansas Department of Correction ("ADC"). The court further found that Jonathan's arrests and incarceration were emotionally damaging to the children and that the prison sentence was a substantial period of the children's lives in which Jonathan could not be a parent to them. The court ordered termination, and Jonathan filed a timely appeal.

We review termination-of-parental-rights cases de novo. *Yarborough v. Ark. Dep't of Human Servs.*, 96 Ark. App. 247, 253, 240 S.W.3d 626, 630 (2006). Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents. *Fredrick v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 104, at 7, 377 S.W.3d 306, 310. The petitioner must prove by clear and convincing evidence that it is in a child's best interest to terminate parental rights, as well as the existence of at least one statutory ground for termination. *Yarborough*, 96 Ark. App. at 253, 240 S.W.3d at 630. Clear and convincing evidence is that degree of proof that will produce in the finder of fact a firm conviction as to the allegation sought to be established. *Id.*, 240 S.W.3d at 630. When the burden of proof is clear and convincing evidence, the inquiry on appeal is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous; a finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.*, 240 S.W.3d at 630. However, we give a high degree of

deference to the circuit court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 215, 40 S.W.3d 286, 292–93 (2001).

Jonathan's first argument on appeal is that he was not properly served with the petition and notice of adjudication hearing. We cannot address this issue because Jonathan has appealed only the July 11, 2014 order terminating his parental rights, not the May 8, 2013 adjudication order. *Hall v. Ark. Dep't of Human Servs.*, 101 Ark. App. 417, 423, 278 S.W.3d 609, 614 (2008) ("Orders not mentioned in a notice of appeal are not properly before the appellate court."). Pursuant to Arkansas Code Annotated section 9-27-341(b)(2) (Supp. 2013), a petition for termination of parental rights initiates a separate proceeding from the previous dependency-neglect adjudication and requires new service of process. It is undisputed that Jonathan was properly served with the petition for termination, provided notice of the termination hearing, and appeared at the hearing. He now argues that alleged deficiencies in service at the adjudication stage prejudiced his due-process rights at the termination stage. However, this argument was not raised below, and we have long held that we will not consider arguments raised for the first time on appeal. *Ark. Dep't of Health & Human Servs. v. Jones*, 97 Ark. App. 267, 274, 248 S.W.3d 507, 512 (2007); *Flowers v. State*, 92 Ark. App. 337, 341, 213 S.W.3d 648, 651 (2005); *Farr v. Farr*, 89 Ark. App. 196, 201, 201 S.W.3d 417, 421 (2005).

Jonathan next argues that there was insufficient evidence to support the circuit court's determination that statutory grounds for termination existed. Arkansas Code Annotated section 9-27-341(b)(3)(B) (Supp. 2013) provides nine grounds upon which parental rights may be

terminated. Only one ground is necessary to terminate parental rights. *Lee v. Ark. Dep't of Human Servs.*, 102 Ark. App. 337, 345, 285 S.W.3d 277, 282 (2008). The circuit court found that the evidence warranted termination on three separate statutory grounds. On appeal, Jonathan challenges only two of those grounds. We have previously held that when a parent does not challenge all of the circuit court's findings as to statutory grounds for termination, the unchallenged ground is sufficient to affirm the termination order. *Casarreal v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 622, at 5 ("When an appellant fails to attack the circuit court's independent, alternative basis for its ruling, we will not reverse.") (citing *Pugh v. State*, 351 Ark. 5, 89 S.W.3d 909 (2002); *Pearrow v. Feagin*, 300 Ark. 274, 778 S.W.2d 941 (1989); *Morehouse v. Lawson*, 90 Ark. App. 379, 206 S.W.3d 295 (2005)).

Jonathan's last point on appeal is that the circuit court erred in determining that termination was in the children's best interest. Specifically, Jonathan argues that the court erred in finding that the children were adoptable when no evidence of adoptability was presented at trial. The plain wording of Arkansas Code Annotated section 9-27-341 (Repl. 2008) makes consideration of the likelihood that the children will be adopted mandatory. *Haynes v. Ark. Dep't of Human Servs.*, 2010 Ark. App. 28, at 2. In *Haynes*, we reversed the termination order because the circuit court heard "absolutely no evidence at all regarding the likelihood of the children's adoptability." *Id.* Here, the court stated at trial that the children were adoptable based upon the CASA report introduced into evidence by the attorney ad litem; in the termination order, the court later stated that its finding of adoptability was based upon DHS caseworker Suzanne Cowan's testimony that the children were "highly adoptable." However, a review of the record

reveals no mention of adoptability in either the CASA report or Cowan's testimony. Therefore, as in *Haynes*, the court's finding of adoptability was clearly erroneous because it was not supported by any evidence.

We note that the court's adoptability determination was erroneous for another reason as well: the children had a stable, permanent home with their mother, and there was no expectation that they would ever be put up for adoption. In *Haynes*, we recognized that while section 9-27-341 makes consideration of adoptability mandatory in termination cases, in some circumstances careful consideration may require the circuit court to find that adoptability "makes no legal difference." *Haynes*, 2010 Ark. App. 28, at 2. We have addressed applicability of the best-interest analysis where adoptability was not at issue. In *Caldwell v. Arkansas Department of Human Services*, 2010 Ark. App. 102, we concluded that, because the child remained in the permanent care of her biological mother, termination of her father's parental rights would not achieve permanency, which is the goal of the statute. Moreover, other factors, including preservation of the child's relationship with her paternal grandparents, weighed against termination. *Id.* at 7. In *Ross v. Arkansas Department of Human Services.*, 2010 Ark. App. 660, 378 S.W.3d 253, and *Hayes v. Arkansas Department of Human Services.*, 2011 Ark. App. 21, we distinguished *Caldwell* and affirmed the termination of parental rights based upon findings that the risk of harm to the children should they ever be returned to their fathers' custody required termination, even absent a need for permanency. In *Hayes*, we explained that, where a parent subjected his child to violence and abuse, termination of appellant's parental rights meets the purpose of section 9-27-341(a)(3) by providing an irrevocable break from the abusive parent. *Hayes*, 2011 Ark. App. 21, at 2. While

7

*Caldwell*, *Ross*, and *Hayes* reached different conclusions as to whether termination was in the children's best interest, all three cases illustrate the fact that adoptability is not always legally relevant. Where, as here, the children have a permanent, stable home and there is no expectation that they will be placed for adoption, the court should find that adoptability makes no legal difference and analyze the children's best interest based upon other factors. *Haynes*, 2010 Ark. App. 28, at 2. We hold that not only was the circuit court's determination of adoptability clear error because it was not supported by any evidence in the record, it was also legally irrelevant. Given the fact that the children have a permanent home with their mother, a finding of adoptability cannot form the basis for determining that termination is in their best interest.

Upon de novo review of the record as to whether termination of Jonathan's parental rights was in his children's best interest, we conclude that this case more closely resembles *Caldwell*. As in *Caldwell*, the children's relationship with their paternal grandparents appears to be one of the most stable influences in their lives, and termination of Jonathan's parental rights jeopardizes that relationship. Additionally, termination serves to cut off the children's ability to benefit from Jonathan's financial support. Unlike in *Ross* and *Hayes*, there is not significant evidence that Jonathan terrorized his family with physical violence. By all accounts, the children were thriving. Kayla testified that she and the children had visited Jonathan during the course of these proceedings, and those visits had been without incident. Although the court found that Jonathan's drug use, mental instability, and criminal convictions posed a risk of harm to the children should they be returned to his custody, it did not address whether termination (rather

than a less-drastic alternative, such as a no-contact order or supervised visitation) was in the children's best interest.

Therefore, we hold that the circuit court's finding that the children were adoptable and its reliance on that finding in concluding that termination would be in the children's best interest were clearly erroneous. We reverse the termination of Jonathan's parental rights and remand this case for further proceedings in accordance with this opinion.

Reversed and remanded.

HARRISON and WHITEAKER, JJ., agree.

*Canova Law Firm*, by: *Adell Ralson*, for appellant.

*Tabitha Baertels McNulty*, Office of Policy & Legal Services, for separate appellee Arkansas Department of Human Services; and

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, for separate appellees minor children.