

Cite as 2016 Ark. App. 66

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV–15–814

| | |
|---|---|
| | Opinion Delivered February 3, 2016 |
| SIDNEY CROWLEY<br>APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT |
| V. | [NO. JV-2003-392] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | HONORABLE LEIGH ZUERKER, JUDGE |
| APPELLEES | AFFIRMED |

**BRANDON J. HARRISON, Judge**

Sidney Crowley appeals the Sebastian County Circuit Court's order that terminated his parental rights to his three children. He argues that termination was not in the children's best interest. We find no error and affirm.

On 28 April 2014, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect for thirteen-year-old S.C., twelve-year-old C.C., and eleven-year-old M.C. The accompanying affidavit explained that DHS had received a referral on April 21 alleging educational neglect on the part of Crowley and failure to protect on the part of Laura Blansett, the children's mother. An investigation revealed that Crowley, who was the custodial parent, had voluntarily left the

children with their mother on April 20 "until such a time he could provide for them." The children reported that they had not been in school since 14 February 2013 and that they had lived in their father's truck on at least two occasions. The children also later reported physical abuse perpetrated by Crowley, which included beating C.C. with a metal stick and pointing a machete at C.C.'s throat. The children also said that Crowley would deny them food as a form of punishment. On April 25, DHS exercised a seventy-two-hour hold on all three children based on "Threat of Harm, Educational Neglect, and not being able to ensure the safety of the juveniles if [Crowley] would pick them up from Laura's care." The affidavit noted that Crowley had been investigated for educational neglect and threat of harm in Oklahoma, that there had been a true finding on Crowley in 2003 for threat of harm and for striking a child, and that Crowley had past criminal convictions for domestic battery, rape, terroristic threatening, and driving on a suspended license.

An ex parte order for emergency custody was granted on April 28, and at the May 2014 probable-cause hearing, the parties stipulated that probable cause existed at the time the emergency order was signed and continued to exist. Blansett was awarded one hour of supervised visitation; Crowley's visitation was denied pending adjudication. DHS was ordered to develop a case plan and conduct a staffing within thirty days.

In June 2014, the circuit court adjudicated the children dependent-neglected, specifically finding that the children "are at a substantial risk of harm due to environmental neglect and physical abuse by the father." The goal of the case was set as reunification with the mother with a concurrent goal of permanent custody with a family member.

SLIP OPINION

Crowley, who did not attend the adjudication hearing, was not granted visitation. Blansett was granted visitation and ordered to attend parenting classes, maintain appropriate housing and transportation, submit to a psychological evaluation, attend domestic-violence classes, and submit to random drug screens. The court ordered that "[i]f the father presents himself to the Department and wishes to work services, he is hereby ordered to complete the same services as the mother, in addition to anger management classes."

The case was reviewed in November 2014, and the court found that Blansett had complied with the case plan in all respects. Accordingly, the court authorized a trial home placement with Blansett to commence immediately. The review order noted that Crowley had not contacted DHS to receive services and had not complied with the orders of the court. The court ordered no contact between Crowley and the children.

In January 2015, the court found that the trial home placement had been successful and awarded custody of the children to Blansett. The court also found that Crowley had made no progress on the case plan, had not complied with the court's orders, and had no contact with the children or DHS since the last review hearing.

In February 2015, DHS filed a motion to terminate Crowley's parental rights, citing abandonment, dependency-neglect as a result of neglect or abuse that could endanger the life of the child, an incapacity or indifference to remedying underlying issues or factors, and aggravated circumstances. At the termination hearing in April 2015, Crowley testified that none of the allegations against him were true and that Blansett had lied to DHS. He asserted that Blansett is a paranoid schizophrenic and a pathological liar.

He also stated that he had never been given a copy of the case plan and that his case worker had lied to him. He admitted that he had attended the staffing but explained that he did not attend the adjudication hearing because it was "overwhelming." He contended that if the physical-abuse allegations against him were true, then he would be in jail. He stated that he had not provided for the children with food, clothing, or money while they were in DHS's custody because there was a no-contact order and because he would be accused of "trying to buy them off." He also asserted that the true finding in 2003 for threat of harm and striking a child was "another lie." He admitted that he was a registered sex offender, stemming from a rape charge in 2003, but explained that it was only because he was "young, dumb, and stupid, and took [a] plea bargain."

As to his current circumstances, Crowley stated that he was staying with a friend and had no income. He also explained that he had a pending appointment with a cardiologist for a heart murmur and another appointment for hernia surgery. He agreed that if given the opportunity to complete the requirements of the case plan, he was ready and able to do that. He admitted he was unable to work but stated that it would be in the children's best interest to be in his custody. He also admitted that he had used illegal drugs, specifically methamphetamine, within the past week, and that he would probably fail a drug test. DHS then requested a drug test, which showed that Crowley was positive for methamphetamine, THC, and Oxycodone.

Blansett testified that she married Crowley in 2000 and that they divorced in 2002. She stated that he was extremely physically abusive, mostly to her but sometimes with the children as well. She explained that Crowley had legal custody of the children but that he

sent her a text that said he and the kids had been living in his truck and eating out of dumpsters. According to Blansett, he asked her to keep the kids until he got back on his feet. She stated that as soon as the children told her about the abuse, she contacted DHS and got them involved. She explained that the children had been in her home since November 2014 and that they were doing well. She said that they do not ask about their father and that they have not expressed an interest in seeing him. She explained that she was a stay-at-home mom and that her husband makes sufficient income to support the family.

Mary Isham, a family service worker, testified that she had been assigned to this case for a little over a month. She explained that she had reviewed the file and that Crowley had not tried to contact her. She testified that termination of Crowley's parental rights was in the children's best interest because the children were afraid of Crowley. She also stated that the children were adoptable but that adoptability was irrelevant in this case; DHS planned to leave the children with their mother.

At the conclusion of testimony and after hearing arguments from counsel, the court found that it was in the best interest of the children to terminate Crowley's parental rights. The court found that

> he has effectively abandoned the juveniles. The juveniles were removed from his home April 28th of 2014. He has not seen the children during that time; he has not provided any amount of support to the children, has not contributed [monetarily], has not provided any food or clothing to them, has not followed the Case Plans or complied with the orders of the Court, has not been present at any of the hearings, other than the Probable Cause Hearing. The court believes that his lack of participation shows an indifference to remedy the issues before him. Those issues are continued drug abuse and the potential of severe harm to the children.

In its written order, the court found as follows:

> In making the best interest determination, the Court has considered the issue of the adoptability of the juveniles and the risk of harm to the juveniles if there is continued contact with the father, Sidney Crowley. The Court notes that the issue of adoptability is not legally relevant in this matter. . . . The Court does find, however, that there is heightened risk of harm to the juveniles if the legal relationship between the juveniles and Sidney Crowley is not terminated. Based on this unacceptable risk of harm, the Court finds that it is in the best interests of the juveniles to terminate the parental rights of Sidney Crowley.

The court also found several statutory grounds for termination, namely, aggravated circumstances, abandonment, and an incapacity or indifference to remedying underlying issues or factors. Crowley filed a timely notice of appeal from the court's order.

A circuit court's order that terminates parental rights must be based on findings proven by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2015); *Dinkins v. Ark. Dep't of Human Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). Clear and convincing evidence is proof that will produce in the fact-finder a firm conviction on the allegation sought to be established. *Dinkins*, *supra*. On appeal, we will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Dinkins*, *supra*. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id*. In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit judge to assess the witnesses' credibility. *Id*.

The intent of Ark. Code Ann. § 9-27-341(a)(3) is to provide permanency in a child's life in all instances in which returning the child to the family home is contrary to the child's health, safety, or welfare, and the evidence demonstrates that a return to the

home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. An order forever terminating parental rights must be based on clear and convincing evidence that the termination is in the best interests of the child, taking into consideration the likelihood that the child will be adopted and the potential harm caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A).

Crowley asserts that terminating his parental rights was unnecessary and not in the children's best interest. He argues that the children's permanency was never at risk, as they were in their mother's care and will remain in her care, and that a no-contact order would have sufficiently served the children's best interest. He contends that his compliance with the no-contact order throughout the pendency of the case shows his ability to abide by such an order and the lack of any future potential harm.

In support, he cites two cases, *Caldwell v. Arkansas Department of Human Services*, 2010 Ark. App. 102, and *Lively v. Arkansas Department of Human Services*, 2015 Ark. App. 131, 456 S.W.3d 383, both of which involve a similar fact situation of termination of a father's parental rights with the child or children remaining in the care of the mother. In *Caldwell*, this court concluded that, because the child remained in the permanent care of her biological mother, termination of the father's parental rights would not achieve permanency, which is the goal of the statute. Moreover, other factors, including preservation of the child's relationship with her paternal grandparents and the lack of any evidence that the father had physically abused or harmed the child, weighed against termination. And in *Lively*, this court found error in the circuit court's best-interest determination because there was no evidence of adoptability; in addition, we noted that

terminating the father's parental rights jeopardized the children's relationship with their paternal grandparents as well as the financial support that the father might provide the children.

However, *Caldwell* and *Lively* are distinguishable from the present case. Unlike *Caldwell*, there was evidence in this case that Crowley had physically abused the children, and according to the case worker, the children were afraid of him. Also, in both *Caldwell* and *Lively* there was evidence of a strong relationship between the children and the paternal grandparents, which was jeopardized by termination; here, we have no such consideration. As such, this case is more akin to *Hayes v. Arkansas Department of Human Services*, 2011 Ark. App. 21, in which this court held that where a parent subjected his children to violence and abuse, termination of a father's parental rights meets the purpose of Ark. Code Ann. § 9-27-341(a)(3) by providing an irrevocable break from the father's violence toward them and their mother. Thus, we affirm the termination of Crowley's parental rights.

Affirmed.

VAUGHT and HIXSON, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

*Jerald A. Sharum*, County Legal Operations, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.