

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-17-73

BRITTNEY BRASHER

APPELLANT

V.

ARKANSAS DEPARTMENT OF HUMAN
SERVICES AND MINOR CHILD

APPELLEES

**Opinion Delivered:** September 20, 2017

APPEAL FROM THE BOONE
COUNTY CIRCUIT COURT
[NO. 05JV-14-90]

HONORABLE DEANNA "SUZIE"
LAYTON, JUDGE

AFFIRMED

### RAYMOND R. ABRAMSON, Judge

Brittney Brasher appeals the Boone County Circuit Court order terminating her parental rights to her daughter, D.M.[1] On appeal, she argues that the circuit court erred in finding that it was in D.M.'s best interest to terminate her parental rights. We affirm.

On December 8, 2014, the Arkansas Department of Human Services (DHS) petitioned the circuit court for emergency custody and dependency-neglect over D.M. The affidavit attached to the petition stated that D.M.'s father had left her in the custody of her maternal great-grandparents and that their residence was inappropriate for the child.[2] The

---

[1]The court also terminated the parental rights of D.M.'s father, Daniel Miller, but he is not a party to this appeal.

[2]Specifically, the affidavit stated that the residence had "a plethora of roaches" on the walls and kitchen cabinets and that trash was piled on the floor. It also stated that D.M.'s maternal great-grandmother had a history with DHS that included findings of environmental neglect.

affidavit noted that Brasher was incarcerated in Texas for a child-endangerment charge and that the State of Arkansas had terminated her parental rights to two other children as a result of her methamphetamine addiction. The court entered an ex parte order for emergency custody on the day the petition was filed. On December 12, 2014, the court found probable cause for the emergency custody. On February 24, 2015, the court adjudicated D.M. dependent–neglected.

On May 13, 2015, the court held a review hearing. Brasher appeared for the hearing by telephone because she remained incarcerated in Texas. The court ordered Brasher to comply with the case plan and court orders and to cooperate with DHS.

On August 11, 2015, the court held a second review hearing. The court noted that Brasher had been released from jail in Texas in May 2015 but that she did not contact DHS until the current hearing, she had not visited D.M., and she had not complied with the case plan. The court changed the goal of the case to adoption but ordered Brasher to continue to comply with the case plan. Specifically, the court ordered her to provide paycheck stubs to DHS, to attend counseling, and to submit to random drug screens.

On February 9, 2016, the court held a permanency-planning hearing. The court found that Brasher had not complied with the case plan. The court noted that Brasher was arrested in November 2015 on an old warrant for a parole violation in Arkansas and had remained incarcerated through December 15, 2015. The court further noted that she had not consistently visited D.M., had attended only a few counseling sessions, and did not have steady employment.

On July 18, 2016, DHS filed a petition for termination of Brasher's parental rights. DHS alleged five grounds for termination.[3] On August 17 and 23, the court held a termination hearing. Brasher testified that she was currently living with her fiancé, Jeffery Muldoon. She explained that they had lived together for a little over a year and planned to move into a bigger house. She stated that she was working temporary jobs for family and friends and that she also had filed for disability due to her seizures and anxiety. She testified that Muldoon is employed and that their joint income is sufficient to support D.M. She further noted that Muldoon had a previous drug addiction and that he was currently on probation.

Brasher explained that when she was released from prison in Texas, she did not immediately contact DHS because she did not have transportation back to Arkansas. She noted that a friend eventually paid for her transportation to Arkansas, and when she returned, she again did not contact DHS because she did not have a stable home. Her grandmother later informed her about the August 2015 review hearing.

Brasher testified that D.M. first entered the foster-care system in North Dakota in 2012, when she was born with methamphetamine in her system. She stated that she had two other children, L.M. and A.M., and that her parental rights had been terminated to them. As to the current case, she testified that she had attended scheduled visitations with D.M. unless her seizure disorder prevented her from attending.

---

[3]Specifically, DHS alleged grounds pursuant to Arkansas Code Annotated sections 9-27-341(b)(3)(B)(i)*(a)*, (ii)*(a)*, (iv), (ix), (vii)*(a)* (Repl. 2015).

Brasher further testified that drugs had been a problem throughout her life and that her "drug of choice" is methamphetamine. She explained that she had participated in the drug-court program in 2009 but had relapsed. She stated that she has now been sober for four years. She explained that she reentered the drug-court program about six months before the hearing and hoped to complete the program by March 2018. If she failed, she would receive a six-year prison sentence. Brasher testified that she chairs Narcotics Anonymous meetings and that she also attends a Christian-based program called "Breaking the Chains." She testified that DHS had referred her for a drug-and-alcohol assessment but that she did not complete the assessment because she had already completed an assessment in drug court. She also participated in counseling through drug court.

At the hearing, Brasher introduced into evidence a letter from the deputy prosecutor. In the letter, the prosecutor commended Brasher on her performance in the drug-court program and stated that "she is one of the more pleasant people in drug court." However, the prosecutor further noted that as a result of her criminal history, Brasher began the program with three strikes. He explained that if Brasher tests positive for an illegal substance or alcohol, or is charged with a jailable offense, she will be terminated from the program and will automatically receive a six-year sentence in the Arkansas Department of Correction.

Charles Hurley, a DHS family-service supervisor, testified that he oversaw D.M.'s case. He stated that for eight of the twelve months he supervised the case, Brasher was incarcerated. He further verified that Brasher did not contact DHS when she was initially released from prison in Texas. He stated that when Brasher eventually contacted DHS, he made a drug-and-alcohol-assessment referral and counseling appointments but that Brasher

4

did not complete the assessment and attended only fifty-eight percent of the counseling sessions. Hurley believed that Brasher had made measurable progress in the case but that her living situation, her work situation, and her relationship status were unstable. He noted that during the May 2015 hearing, when Brasher appeared by telephone while in prison in Texas, Brasher stated that she planned to continue her relationship with D.M.'s father; but after she was released from prison, she did not contact DHS and started a relationship with Muldoon shortly thereafter. Hurley also pointed out that D.M. had been in foster care for thirty months of her forty-two-month life. He further testified that D.M. is highly adoptable and that individuals had expressed interest in adopting her.

Beth Christopher, a DHS family-service worker, testified that she supervised Brasher's visitations with D.M. She stated that the visits generally went well and that she eventually would leave Brasher alone with the child for short increments of time. She noted, however, on a few occasions, she had to cancel visitations because Brasher appeared to be heavily medicated. She acknowledged that Brasher took seizure medications.

Carly Williams, also a DHS family-service worker, testified that she had worked on D.M.'s case for about twenty-eight days beginning in July 2016. She stated that Brasher had not provided her with documentation of employment. She explained that Brasher originally told her that she was a Mary Kay consultant but that she later admitted she was not generating income and planned to quit. She stated that as of last week, Brasher had no income besides support from Muldoon.

Muldoon testified that in March 2011, he served a four-year prison sentence for possession of methamphetamine. He stated that since his release, he has maintained his

sobriety and has complied with his parole requirements. He noted that his parole would end next month and that he is employed full time. Muldoon further testified that Brasher takes medications only for her seizures and that she has maintained her sobriety throughout their relationship. He had no concerns with her ability to parent D.M. Muldoon is committed to supporting Brasher and D.M. financially, and he hopes to adopt D.M. when he and Brasher marry.

Tammy Dewey, Brasher's drug-court supervisor, testified that Brasher has been in the program since January 19, 2016, she meets with Brasher twice a week, and Brasher had missed only two meetings. She further stated that she had no reason to believe that Brasher is using any illegal substances. She noted that Brasher has about twenty-four weeks left to complete the program. She testified that Brasher is cooperative, stable, and very polite. Dewey discussed Brasher's previous participation in the program in 2009 and stated that Brasher is now a different person. She stated that Brasher was consistently abusing drugs at that time and that she absconded from the program within six months.

Yolande Watson, Brasher's probation officer, testified that Brasher is polite and cooperative and has tested negative on all drug screens. She stated that Brasher is required to attend three Narcotics Anonymous meetings per week and that she has consistently submitted documentation of her attendance. She further testified that Brasher is always willing to participate in drug-court community-service events. At the conclusion of the hearing, the court took the matter under advisement.

On November 9, 2016, the court entered a written order terminating Brasher's parental rights based on three grounds pled in the petition. In the order, the court specifically found that

> there is a potential harm to the health and safety of [D.M.] if she were returned to the custody of [Brasher] today. At this time [D.M.] has been in care, as indicated, almost half of her life and today the Court cannot find that the health and safety needs can be met by returning [D.M.] to the home of [Brasher] . . . .
>
> [Brasher] was released from prison on May 29, 2015, however [she] did not appear in this Court or make contact with the Department until August 11, 2015. [Brasher] is still dependent on others for her accountability and her own necessities. [Brasher] does not have sufficient income, she does not have housing that she can sustain on her own or a means thereto, she has not addressed her mental health needs, she has significant criminal barriers for which she risks incarceration daily, and she is currently addressing substance abuse issues, however, she has addressed those in the past with drug treatment and drug court and both were unsuccessful on multiple occasions. [Brasher] is once again engaged in a drug court program for which there is oversight and accountability. Without such oversight and accountability, the Court finds that she would not be successful and that the past has been an indicator of the future of her in regards to drugs and criminal activity for which this case began with . . . .
>
> The instability, given the age of [D.M.], would cause further harm to the child emotionally at such a young age and place her at risk due to the lifestyle of the parents reflected in testimony as one involving ongoing criminal activity and associations . . . .
>
> The Court finds by clear and convincing evidence it is in the best interest of the Juvenile to terminate the parental rights of . . . Brasher . . . and the Court specifically considered the likelihood of [D.M.] to be adopted if termination is granted and the potential harm to the health and safety of [D.M.] caused by returning to the custody of the parents today, and the Court finds the testimony demonstrates same.

Brasher timely appealed the termination order to this court.

We review termination-of-parental-rights cases de novo. *Lively v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 131, 456 S.W.3d 383. It is DHS's burden to prove by clear and convincing evidence that it is in a child's best interest to terminate parental rights as well as the existence of at least one statutory ground for termination. *Id.* On appeal, the

inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.* We give a high degree of deference to the circuit court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Id.*

The termination of parental rights is a two-step process. The circuit court must find by clear and convincing evidence (1) the existence of one or more statutory grounds for termination and (2) that termination is in the best interest of the children. *Wafford v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 299, 495 S.W.3d 96. In this case, Brasher does not appeal the circuit court's finding of a statutory ground for termination. She challenges only the circuit court's best-interest finding.

The best–interest analysis includes consideration of the likelihood that the children will be adopted and of the potential harm caused by returning custody of the children to the parent. Ark. Code Ann. § 9-27-341(b)(3)(A) (Repl. 2015). However, adoptability and potential harm are merely factors to be considered—they are not elements of the cause of action and need not be established by clear and convincing evidence. *See Chaffin v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 522, 471 S.W.3d 251. Rather, after considering all of the factors, the circuit court must find by clear and convincing evidence that termination of parental rights is in the best interest of the children. *Id.*

Brasher does not challenge the court's adoptability finding. Instead, she argues that the court erred in finding that she posed a risk of harm to D.M. She asserts that the court

automatically terminated her rights merely because her parental rights had been terminated to her other children. She argues that there was no connection between the harm present in the prior case and the level of risk of harm to D.M. in this case. She notes that in the present case, she benefited from DHS services and is ready for D.M. to return to her custody.

We hold that the circuit court did not clearly err in finding that it was in the best interest of D.M. to terminate Brasher's parental rights. The court did not automatically terminate Brasher's parental rights because her rights had been terminated in the past. The court relied on Brasher's current circumstances in concluding that it was not in D.M.'s best interest to return to Brasher's custody. Specifically, the court noted Brasher's dependence on others for income and housing and her unresolved criminal charges. Brasher had significant time remaining in the drug-court program, and if she failed, she could be sentenced to the Arkansas Department of Correction for six years. The court recognized that Brasher had made some progress in the program but noted that she had entered the program in the past, had been unsuccessful, and had not exhibited sobriety without the oversight of a treatment program. As the court noted in its order, we have held that it is appropriate for a circuit court to consider a parent's past behavior as a predictor of likely potential harm should the children be returned to the parent's custody. *Harbin v. Ark. Dep't of Human Servs.*, 2014 Ark. App. 715, 451 S.W.3d 231. Moreover, D.M. had already spent more than half of her life in foster care. "Stability and permanence for children are the objectives of the TPR procedure, and living in continued uncertainty is itself potentially harmful to the children." *See Bean v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 77, at 30, 513 S.W.3d 859, 877. Given this evidence and the circuit court's detailed and well-reasoned

SLIP OPINION

termination order, we are not left with a definite and firm conviction that a mistake has been made. Accordingly, we hold that the circuit court did not err in finding that it was in the best interest of D.M. to terminate Brasher's parental rights.

Affirmed.

VAUGHT and HIXSON, JJ., agree.

*Tabitha McNulty*, Arkansas Public Defender Commission, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor child.