
# ARKANSAS COURT OF APPEALS
DIVISION I
**No.** CV-17-596

| | |
|---|---|
| CORA JACOBS<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br>APPELLEES | **Opinion Delivered:** November 8, 2017<br><br>APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT<br>[NO. 66FJV-15-299]<br><br>HONORABLE LEIGH ZUERKER, JUDGE<br><br>AFFIRMED |

## RAYMOND R. ABRAMSON, Judge

Cora Jacobs appeals the Sebastian County Circuit Court order terminating her parental rights to her children, J.H., R.H., and Z.H. On appeal, she argues that the circuit court erred in finding it was in the children's best interest to terminate her parental rights. We affirm.

On May 2, 2015, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency neglect of J.H., R.H., and Z.H. The affidavit attached to the petition stated that police had responded to a domestic-disturbance call at the residence where Jacobs was staying with the children and then called DHS because the home was inappropriate for the children and Jacobs appeared to be under the influence of alcohol. When the DHS worker arrived, Jacobs admitted that she had used methamphetamine two days earlier but denied being under the influence of any substance

at that time. The affidavit further reported that DHS had opened a protective-services case with Jacobs in 2014 because Jacobs had tested positive for methamphetamine during her pregnancy with R.H., and R.H. had tested positive for marijuana at birth. In the 2014 case, DHS offered Jacobs services in the form of housing, food banks, transportation, parenting classes, a drug-and-alcohol assessment, utility assistance, and vouchers to be used at furniture and clothing outlets. However, she refused to complete the drug-and-alcohol assessment, continued to test positive for marijuana, and evaded DHS. On the same day the May 2015 emergency petition was filed, the circuit court entered an ex parte order for emergency custody.

On May 12, 2015, the court entered a probable-cause order. On July 2, 2015, the court adjudicated the children dependent-neglected as a result of Jacobs's drug-and-alcohol abuse. The court set the goal of the case as reunification and ordered Jacobs to obtain and maintain stable housing, income, and transportation; comply with a psychological evaluation and a drug-and-alcohol assessment; submit to random drug screens; complete domestic-violence classes; and resolve all criminal charges.

On January 5, 2016, the court entered a review order. The court found that DHS had not made reasonable efforts to provide family services. The court continued the goal of reunification and authorized DHS to arrange appropriate visitation. The court found that Jacobs had partially complied with the case plan by completing a drug-and-alcohol assessment, inpatient drug treatment, and parenting classes and submitting to drug screens. However, the court found that she did not have housing or transportation.

SLIP OPINION

On April 28, 2016, the court held a permanency-planning hearing. The court found that DHS had made reasonable efforts to provide family services. The court further found that Jacobs had only partially complied with the case plan. Specifically, the court noted that she did not have housing or transportation and had failed to complete the psychological evaluation, domestic-violence classes, and outpatient-drug treatment. The court authorized DHS to increase visitation at its discretion, and it continued the goal of the case as reunification.

On August 8, 2016, the court entered a fifteen-month review order. The court noted that Jacobs had found housing, although it was not stable or independent. The court found that Jacobs had also completed an inpatient-drug-treatment program but that she had not completed outpatient-drug treatment and was in need of a new drug-and-alcohol assessment. The court ordered DHS to refer her for an assessment. The court noted that she had completed the psychological evaluation and ordered DHS to provide referrals for the services recommended in the evaluation. On September 9, 2016, the court entered an amended fifteen-month review order to withhold a reasonable-efforts finding.

On September 12, 2016, the court entered a sixteen-month review order. The court noted that Jacobs had been arrested for domestic battery on July 26, 2016. The court found that Jacobs had complied with the case plan and that she had "been candid about her illicit drug use." The court noted that DHS had provided Jacobs with a second referral for a drug-and-alcohol assessment, and it made a reasonable-efforts finding.

On October 26, 2016, DHS filed a petition for termination of Jacobs's parental rights. DHS alleged three statutory grounds: (1) the failure-to-remedy ground,[1] (2) the subsequent-factors ground,[2] and (3) the aggravated-circumstances ground.[3] The court held a termination hearing on January 19, 2017.

At the hearing, Jacobs testified about her first encounter with DHS at R.H.'s birth in 2014. She explained that both she and R.H. had tested positive for THC and that DHS had offered her parenting classes and outpatient-drug treatment at that time. As to the current case, Jacobs explained that she completed inpatient-drug treatment in November 2015 and had been sober until March 2016 but that she relapsed after she took pain medicine for a work injury. She further admitted that she had used amphetamines in the summer of 2016 and THC in November 2016. She explained that after she had relapsed, DHS took almost four months to refer her for a second inpatient program. She received outpatient assistance until she obtained a second inpatient referral. She testified that she completed the second inpatient program on January 16, 2017, and that DHS had made a referral for a twelve-week outpatient program. She explained that she was supposed to begin the outpatient program immediately after the inpatient program but she missed her appointment because she lost the keys to her car. She stated that she would begin the outpatient program the next week.

---

[1]Ark. Code Ann. § 9–27–341(b)(3)(B)(i)*(a)* (Repl. 2015).

[2]Ark. Code Ann. § 9–27–341(b)(3)(B)(vii)*(a)*.

[3]Ark. Code Ann. § 9–27–341(b)(3)(B)(ix)*(a)*.

Jacobs further testified that DHS had referred her to domestic-violence classes and that she had started taking those classes, but she did not complete the program because she entered inpatient-drug treatment. She noted that she had completed parenting classes while in the inpatient program. As to her psychological evaluation, she testified that she had completed the evaluation, but after she had entered drug treatment, DHS did not refer her to individual therapy.

Jacobs stated that she had been arrested in July for domestic battery because of a fight with her brother and sister-in-law, which resulted in a misdemeanor conviction. She testified that she had resolved all her criminal issues except that she owed $500 in fines. She explained that she is currently employed at Dollar Tree and makes $8.25 an hour. She noted that her employer allowed her to take leave while she attended inpatient-drug treatment. She testified that she now has a two-bedroom apartment but that the lease is in her mother's name and that a family friend had paid her rent while she was in drug treatment. Jacobs stated that her children are her "entire world" and that they are struggling in foster care.

Lisa Walton, the DHS caseworker, verified that Jacobs had completed two inpatient-drug-treatment programs during the pendency of this case. However, she did not believe Jacobs had shown long-term sobriety. She further testified that Jacobs did not have the ability to care for and parent the children. She had observed a two-hour visitation and testified that Jacobs became short-tempered and frustrated with the children. On cross-examination, Walton admitted that she observed the visitation in August 2016—during Jacobs's relapse and when she was awaiting a second inpatient-drug-treatment referral. Walton further testified that Jacobs had been arrested four times during the case: on October

21, 2016, for failure to pay fines; on July 23, 2016, for domestic battery; on September 9, 2015, for public intoxication; and on May 13, 2015, for hindering apprehension for prosecution. She testified that the children are adoptable and that they do not have any health or physical barriers that would prevent adoption.

Following Walton's testimony, Jacobs's attorney recalled Jacobs to the stand. Jacobs recognized that she had been short-tempered with her children during a visitation, but she explained that she had not visited them in a while and testified that she would never hurt them.

At the conclusion of the hearing, the court orally terminated Jacobs's parental rights. On April 17, 2017, the court entered a written order finding that both the failure-to-remedy ground and the subsequent-factors ground supported termination. The court further found that it was in the children's best interest to terminate Jacobs's parental rights. The court found that the children would be subject to substantial risk of potential harm if returned to Jacobs's custody based on Jacobs's "significant drug abuse and lack of sobriety throughout the majority of the case." Jacobs timely appealed the termination order.

We review termination–of–parental–rights cases de novo. *Lively v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 131, 456 S.W.3d 383. It is DHS's burden to prove by clear and convincing evidence that it is in a child's best interest to terminate parental rights as well as the existence of at least one statutory ground for termination. *Id.* On appeal, the inquiry is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a

definite and firm conviction that a mistake has been made. *Id.* We give a high degree of deference to the circuit court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Id.*

The termination of parental rights is a two-step process. The circuit court must find by clear and convincing evidence (1) the existence of one or more statutory grounds for termination and (2) that termination is in the best interest of the children. *Wafford v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 299, 495 S.W.3d 96. In this case, Jacobs does not challenge the court's finding of a statutory ground for termination. She challenges only the court's best-interest finding.

The best-interest analysis includes consideration of the likelihood that the children will be adopted and of the potential harm caused by returning custody of the children to the parent. Ark. Code Ann. § 9-27-341(b)(3)(A). However, adoptability and potential harm are merely factors to be considered—they are not elements of the cause of action and need not be established by clear and convincing evidence. *See Chaffin v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 522, 471 S.W.3d 251. Rather, after considering both factors, the circuit court must find by clear and convincing evidence that termination of parental rights is in the best interest of the children. *Id.*

Here, Jacobs does not challenge the court's adoptability finding. Instead, she argues that the court erred in finding that the children would be subject to potential harm if returned to her custody. She notes that the court found potential harm based on her drug abuse and lack of sobriety, but she argues that the evidence does not support those findings. She asserts that she made significant and measurable progress throughout the case and if

7

given more time, she could demonstrate stability in her sobriety. She recognizes that she relapsed, but she points out that she self-reported that relapse and then entered a second inpatient program. She cites *Knight v. Ark. Dep't of Human Servs.*, 87 Ark. App. 230, 189 S.W.3d 498 (2004), wherein this court stated that a one-time relapse does not warrant termination of parental rights.

We disagree and hold that the circuit court's decision that it was in the children's best interest to terminate Jacobs's parental rights was not clearly erroneous. The circumstances here are distinguishable from *Knight*. In *Knight*, the sole issue that caused removal was the mother's drug use, and her relapse resulted from one positive drug screen. *Id.* Further, the younger child had been removed from the mother's custody for only seven months while the older child had been removed for one year. *Id.*

Here, the evidence showed that DHS first opened a case with Jacobs in 2014 due to her drug use, and at that time, she refused to complete a drug-and-alcohol assessment, continued to test positive for drugs, and evaded DHS. DHS then opened the instant case in 2015 again for Jacobs's drug use. She completed her first inpatient drug treatment but failed to attend outpatient treatment and then relapsed from March 2016 through November 2016. Even though she completed a second inpatient drug treatment, she did so only a few days prior to the termination hearing and then missed her appointment for outpatient treatment because she lost the keys to her car. Although there is evidence that DHS delayed referring Jacobs for a second inpatient treatment, DHS offered her outpatient assistance during the interim. We further note that, at the time of the termination hearing, the children had been out of Jacobs's custody for twenty months. This is a case where "a child's need for

permanency and stability may override a parent's request for additional time to improve the parent's circumstance." *Contreras v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 604, at 7, 474 S.W.3d 510, 515. Moreover, in addition to her drug use, Jacobs had been arrested on four different occasions since the children had been removed from her custody. Based on these facts, the circuit court's finding that termination was in the children's best interest was not clearly erroneous.

Affirmed.

GLADWIN and WHITEAKER, JJ., agree.

*Leah Lanford*, Arkansas Public Defender Commission, for appellant.

*Jerald A. Sharum*, Office of Chief Counsel, for appellee.

*Chrestman Group, PLLC*, by: *Keith L. Chrestman*, attorney ad litem for minor children.