Cite as 2020 Ark. App. 286

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-20-19

|  |  |  |
|---|---|---|
| DESARE DEAN | | **Opinion Delivered** May 6, 2020 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, EIGHTH DIVISION |
| V. | | [NO. 60JV-18-7] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | | HONORABLE WILEY A. BRANTON, JR., JUDGE |
| | APPELLEES | |
| | | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

Desare Dean appeals the Pulaski County Circuit Court order terminating her parental rights to her son, DJ. Dean argues that termination was not in DJ's best interest. We affirm.

DJ was taken into custody by the Arkansas Department of Human Services (DHS) two days after his birth in December 2017 because Dean was incarcerated in the Arkansas Department of Correction and there was no one to care for him. DJ was subsequently adjudicated a dependent juvenile due to Dean's incarceration and the lack of a legal caretaker. Dean remained incarcerated for the entirety of the case. Joe Juniel was named a putative father and appeared at the probable-cause hearing, but he was incarcerated beginning in February 2018. DJ was placed in two foster-care placements and had visits

with Dean in prison. DHS explored the possibility of permanent custody with various relatives and fictive kin.

A termination hearing was ultimately held in October 2019. Juniel appeared at the hearing, and paternity-test results that established him as DJ's father were entered into the record. Accordingly, the court afforded him party status and noted that his parental rights were not at issue in this hearing. Juniel testified that he had been incarcerated in Arkansas, Tennessee, and Georgia from February 2018 through July 2019. He said that he was currently employed and living with his grandmother, and he wanted to be considered for placement. If he was not an option, he wanted his father to be considered. The court noted that there was a "hold" on Juniel for pending charges in Arkansas and that he had seen DJ only once. The court ordered DHS to offer reunification services to Juniel and to pursue a home study on his father. The court set the next hearing for Juniel as a termination hearing in January 2020 "[b]ecause of the time factor" but noted that termination was "not a foregone conclusion."

Regarding Dean, the caseworker, Lauren Hill, testified that Dean was serving a fifteen-year sentence for multiple convictions and that her parole-eligibility date had been pushed back to September 30, 2022, due to disciplinary actions. Hill testified that DJ, who had been in foster care for almost two years, is highly adoptable and needed permanency. Hill said that none of Dean's relatives were a placement option at that time and that Juniel needed services.

The circuit court found that four statutory grounds supported termination and that termination of Dean's rights was in DJ's best interest. The court stated that there were issues

2

with the relatives who had been considered for placement and it did not see a reason to delay termination; however, it noted that Dean's relatives could still pursue adoptive placement.

We review termination-of-parental-rights cases de novo. *Lively v. Ark. Dep't of Human Servs.*, 2015 Ark. App. 131, 456 S.W.3d 383. Termination of parental rights is an extreme remedy and in derogation of the natural rights of parents. *Id.* In order to terminate parental rights, a circuit court must find by clear and convincing evidence the existence of at least one statutory ground for termination and that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2019).

Clear and convincing evidence is that degree of proof that will produce in the finder of fact a firm conviction as to the allegation sought to be established. *Lively, supra.* The inquiry on appeal is whether the circuit court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous; a finding is clearly erroneous when, although there is evidence to support it, the appellate court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id.* However, we give a high degree of deference to the circuit court, as it is in a far superior position to observe the parties before it and judge the credibility of the witnesses. *Id.*

Dean argues that there was insufficient evidence that termination was in DJ's best interest because the less-restrictive option of placement with Juniel or his relatives was still

being pursued. She contends that Juniel has not been found to be unfit and that adoption was not an available option at this time, which made termination of her rights premature. She does not challenge the statutory grounds for termination.

As noted by Dean, in considering the disposition alternatives, the circuit court shall give preference to the least restrictive disposition consistent with the best interest of the child. Ark. Code Ann. § 9-27-329(d) (Supp. 2019). However, a court may terminate the rights of one parent and not the other parent if the court finds that it is in the best interest of the child. Ark. Code Ann. § 9-27-341(c)(2)(B). Dean relies on *Lively*, *supra*, where we reversed the termination of a father's parental rights to children who had a permanent, stable home with their mother. Unlike the children in *Lively*, however, DJ was in foster care, not the custody of the other parent. DJ had been in foster care for all but the first two days of his life, and it was only a possibility that he would ever be placed with Juniel, who had been incarcerated for most of DJ's life. Although, as Dean argues, she had not physically harmed DJ, she had been incarcerated for his entire life and at the time of the termination hearing was not due to be released for three more years. A juvenile's need for permanency and stability overrides a parent's request for additional time to improve circumstances, and courts will not enforce parental rights to the detriment of the well-being of the child. *White v. Ark. Dep't of Human Servs.*, 2017 Ark. App. 529, 530 S.W.3d 402. The intent of the termination statute is to provide permanency in the child's life in all circumstances where a return to the parent is contrary to the juvenile's health, safety, or welfare and cannot be accomplished in a reasonable period of time as viewed from the child's perspective. *Id.*

4

Even though adoption was not being pursued at this time, the circuit court's finding that termination of Dean's rights was in DJ's best interest was not clearly erroneous.

Affirmed.

ABRAMSON and MURPHY, JJ., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.

*Andrew Firth*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor child.