Cite as 2020 Ark. App. 342

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV–20–40

|  |  |
|---|---|
| PEGGY KILPATRICK<br><br>APPELLANT<br><br>V.<br><br>ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN<br><br>APPELLEES | **Opinion Delivered:** June 3, 2020<br><br>APPEAL FROM THE MADISON COUNTY CIRCUIT COURT [NO. 44JV-17-28]<br><br>HONORABLE STACEY ZIMMERMAN, JUDGE<br><br>AFFIRMED |

## MIKE MURPHY, Judge

Appellant Peggy Kilpatrick appeals from the Madison County Circuit Court order terminating her parental rights to her children, E.M. (DOB: 11-11-2004), J.K. (DOB: 12-29-2011), and B.M. (DOB: 1-12-2015). On appeal, Kilpatrick argues that the termination order was not supported by sufficient evidence. She challenges only the circuit court's best-interest finding.[1] We affirm.

On April 27, 2017, the Arkansas Department of Human Services ("Department") exercised an emergency hold on E.M., J.K., and B.M. and filed a petition for emergency custody and dependency-neglect. The affidavit supporting the petition alleged that the Department received a report that Kilpatrick had physically abused E.M., which resulted in her arrest for domestic battery and endangering the welfare of a minor. The Department

---

[1]The circuit court also terminated the parental rights of the children's respective fathers, but they are not parties to this appeal.

noted that it had been involved with the family since 2008 and had made services available to prevent removal from the home. That first contact with Kilpatrick was due to an inadequate-shelter investigation. However, that case was closed when Kilpatrick fled, and the Department was unable to locate her. The next case was opened in May 2013 and lasted until April 2014. It was opened due to domestic violence between Kilpatrick and her husband; both were found to be highly intoxicated while E.M. and J.K. were present. In July 2015, a protective-services case was opened because J.K. almost drowned while in Kilpatrick's custody. In November 2016, while in Kilpatrick's custody, E.M. beat and strangled J.K., which required J.K. to be hospitalized.

The circuit court entered an ex parte order of emergency custody, and upon conducting a probable-cause hearing, it found that probable cause existed for the children to remain in the Department's custody. The children were adjudicated dependent-neglected on June 23 due to abuse, neglect, and parental unfitness. The circuit court established a goal of reunification and ordered Kilpatrick to comply with the standard welfare orders of the Department. The children were originally placed in the custody of their maternal aunt and uncle. After an allegation that E.M. had molested his aunt's stepson and his uncle was arrested for aggravated assault, the children were placed back in the Department's custody. In the order for emergency change of custody, the court found that it was not in the children's best interests to be placed together and ordered E.M. be placed in a home separate from his siblings.

In an October 27 review hearing, the court continued the goal of reunification and found Kilpatrick was not in compliance with the case plan. Specifically, she had not

completed her psychological evaluation, submitted to all random drug screens, or attended all her visits with J.K. and B.M. However, on February 23, 2018, the circuit court held a permanency-planning hearing and authorized a trial home placement with J.K. and B.M. based on Kilpatrick's compliance. On July 24, due to the success of the trial home placement, the court placed J.K. and B.M. back in Kilpatrick's legal custody. On November 20, after only four months, the children returned to the Department's custody when Kilpatrick was arrested for DWI and two counts of child endangerment after she was involved in a single-car rollover accident with J.K. and B.M. in the car.

On December 7, the court held a review hearing and found that Kilpatrick had made minimal progress toward completing the court orders and case plan despite the Department's reasonable efforts to provide family services to achieve the goal of reunification. On February 8, 2019, the Department filed a motion to terminate reunification services. On March 29, following a hearing, the court granted the motion on the aggravated-circumstances ground. It specifically found that due to Kilpatrick's involvement with the Department since 2008, arrests, and failure to resolve her alcohol abuse, there was little likelihood that continued services would result in a reunification. Additionally, the circuit court found that Kilpatrick's alcohol abuse caused trauma to the juveniles, that J.K. had PTSD, and that B.M. had a diagnosis that was a precursor to PTSD.

At that same hearing, the court changed the goal of the case to adoption. It found that Kilpatrick had complied with most of the court orders and case plan but that she had not demonstrated an ability to protect the children and keep them safe from harm. On May 1, the Department filed a petition to terminate Kilpatrick's parental rights. On September

27, the court held a termination-of-parental-rights hearing during which it took testimony from Kilpatrick, her probation officer, J.K.'s therapist, E.M.'s therapist, the Department's caseworker, Kilpatrick's new husband, and an acquaintance of Kilpatrick. At the conclusion of the hearing, the court terminated Kilpatrick's parental rights on the following grounds: failure-to-remedy, Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)* (Supp. 2019); subsequent-factors, Ark. Code Ann. § 9-27-341(b)(3)(B)(vii); and aggravated circumstances, Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)(3)(A)–(B)(i)*.

The circuit court found that it was in the juveniles' best interest to terminate Kilpatrick's parental rights on the basis of the juveniles' adoptability and the potential harm they would suffer if returned to Kilpatrick's custody. Key findings from the court's termination order included its conclusion that Kilpatrick had not addressed the root cause of the case because as recently as four months before the hearing, she was arrested, spent thirty days in jail, and is now on probation for two years for two felony counts of endangering the welfare of a minor. It noted that Kilpatrick's current husband was recently arrested for possession of drug paraphernalia. The court also found that throughout the Department's eleven-year involvement with the family, Kilpatrick had continually exposed the children to violence and her intoxication. The court further found that there was little likelihood that continued services and additional time would result in successful reunification. The court found that the children are adoptable. It noted that B.M. is well-adjusted. As to J.K., it found that while he does have major behavioral issues, they are due to trauma caused by Kilpatrick, and he is improving. Lastly, it acknowledged E.M.'s desire to not be adopted but explained that he does not know what a safe, stable family is. The

court found that returning the children to Kilpatrick's custody would subject them to a substantial risk of harm because the children need stability that she is unable to provide. The court terminated Kilpatrick's parental rights, and this appeal follows.

We review termination-of-parental-rights cases de novo. *Heath v. Ark. Dep't of Human Servs.*, 2019 Ark. App. 255, at 5–6, 576 S.W.3d 86, 88–89. We review for clear error, and a finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* A court may order termination of parental rights if it finds clear and convincing evidence to support one or more statutory grounds listed in the Juvenile Code, Ark. Code Ann. § 9-27-341(b)(3)(B), and that termination is in the best interest of the child, taking into consideration the likelihood of adoption and the potential harm to the health and safety of the child that would be caused by returning him or her to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A).

On appeal, Kilpatrick does not challenge the court's finding that the Department proved grounds for termination. Her only argument for reversal relates to best interest. In making a best-interest determination, the circuit court must look at all the circumstances, including the potential harm of returning the children to their parents' custody, specifically the effect on the children's health and safety, and it must consider the likelihood that the children will be adopted. Ark. Code Ann. § 9-27-341(b)(3). Kilpatrick does not challenge the adoptability finding, so we address only the potential-harm prong of the circuit court's best-interest finding.

In assessing the potential-harm factor, the circuit court is not required to find that actual harm would result or to identify specific potential harm. *Gonzalez v. Ark. Dep't Human Servs.*, 2018 Ark. App. 425, at 12, 555 S.W.3d 915, 921. Additionally, "a parent's failure to comply with court orders is sufficient evidence of potential harm, and . . . a failed trial home placement may be considered evidence of potential harm." *Id.* at 12–13, 555 S.W.3d at 921–22. Further, potential harm includes a child's lack of stability in a permanent home; a court may consider a parent's past behavior as a predictor of future behavior. *Id.* at 12, 555 S.W.3d at 921.

We hold that the circuit court did not err in finding that termination of Kilpatrick's parental rights was in her children's best interest. The circuit court must consider a parent's compliance and behavior during the entire dependency-neglect case as well as the evidence presented at the termination hearing to decide whether the termination is in the children's best interest. Ark. Code Ann. § 9-27-341(a)(4). Here, the case began because Kilpatrick was arrested for domestic battery and endangering the welfare of a minor. During the dependency-neglect case, Kilpatrick was arrested for two more counts of child endangerment. An event that ended the trial home placement. Throughout the two-year case, Kilpatrick has failed to fully comply with the case plan. Further, despite meaningful services from the Department for eleven years, Kilpatrick has time and again displayed that she cannot keep her children safe from harm.

Kilpatrick argues that the court's best-interest finding should be reversed because the children were more at risk in foster care than in her care. She asserts that there would be no harm in reversing the termination order and extending her additional time and services

because the children were not in an adoptive placement at the time of termination and that the likelihood that it would happen soon was suspect.

In *Jones-Lee v. Arkansas Department of Human Services*, we held that

> [a parent] cannot create the condition that caused her children to be placed in foster care and then argue that the instability of the foster-care system precludes the circuit court from finding that returning her children to her poses greater potential harm than having the children remain in the foster-care system. Foster care is not meant to be a stable, long-term solution, which is precisely why parents are given limited time to comply with the case plan, and why reunification must be achieved within a reasonable time, from the children's perspective.

2009 Ark. App. 160, at 16, 316 S.W.3d 261, 270.

Here, the caseworker testified that all three children are likely to be adopted. A juvenile's need for permanency and stability overrides a parent's request for additional time to improve circumstances, and we will not enforce parental rights to the detriment of the well-being of the children. *Dean v. Ark. Dep't of Human Servs.*, 2020 Ark. App. 286, at 4–5, 600 S.W.3d 136, 139. Even though the children were not in an adoptive placement at the time, the circuit court's finding that termination of Kilpatrick's rights was in the children's best interest was not clearly erroneous.

Affirmed.

GRUBER, C.J., and BROWN, J., agree.

*Victoria Morris*, for appellant.

*Ellen K. Howard*, Office of Chief Counsel, for appellee.

*Kimberly Boling Bibb*, attorney ad litem for minor children.