Cite as 2023 Ark. App. 230

# ARKANSAS COURT OF APPEALS
## DIVISION II
No. CV-22-788

| | |
|---|---|
| JEANETTE MACIAS | Opinion Delivered April 19, 2023 |
| APPELLANT | APPEAL FROM THE LOGAN COUNTY CIRCUIT COURT, NORTHERN DISTRICT [NO. 42PJV-21-39] |
| V. | |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILD | HONORABLE TERRY SULLIVAN, JUDGE |
| APPELLEES | AFFIRMED |

## RITA W. GRUBER

Jeanette Macias appeals the order of the Logan County Circuit Court terminating her parental rights to her daughter (MC), born December 5, 2021. On appeal, Macias contends that the Arkansas Department of Human Services (DHS) failed to present sufficient proof that termination was in MC's best interest. Because the specific issues raised by Macias on appeal are not preserved, we affirm.

### I. *Facts and Procedural History*

On December 6, 2021, a protective-services case was opened regarding MC pursuant to Garrett's Law because Macias had tested positive for amphetamines, methamphetamine, THC, and benzodiazepine at MC's birth. On December 8, DHS took custody of MC pursuant to a seventy-two-hour hold, when a hospital nurse reported that Macias had

attempted to suffocate MC while alone with her in her hospital room. DHS filed a petition for emergency custody and dependency-neglect on December 13, alleging that MC was dependent-neglected due to inadequate supervision, neglect, and parental unfitness. Michael Parham was identified as MC's putative father.[1] An affidavit of family service worker Marla Nelson (FSW Nelson) supported the petition. The affidavit identified a maternal grandmother, Sarah Nehus, as a relative, and set out that DHS had the following history with Macias. In September 2016, there was an unsubstantiated allegation of abuse for striking a child six or under. A protective-services case was also opened in September 2016 due to the threat of harm involving two of Macias's children, and a foster-care case was opened regarding those same two children in October 2017, both of whom were subsequently placed in the permanent custody of their paternal grandmother. In November 2020, a protective-services case was opened pursuant to Garrett's Law with respect to a third child of Macias, who was subsequently placed in the legal custody of that child's paternal grandmother.

The circuit court entered an ex parte order for emergency custody December 13, 2021, finding that MC should continue in the custody of DHS. The court held a probable-cause hearing on December 15 and 17, at which Macias and Parham were present. An order was entered on January 7, 2022, finding that probable cause continued to exist for the emergency order to remain in place and ordering supervised visitation as well as numerous

---

[1]Parham is not a party to this appeal.

services, including a drug-and-alcohol assessment for Macias. Parham was ordered to submit to genetic testing to determine if he is MC's father.

On February 2, the court held an adjudication hearing via Zoom. Macias appeared from the Logan County jail due to her incarceration there. Parham was also present. On February 7, the circuit court entered an order adjudicating MC dependent-neglected based on parental unfitness due to Macias's drug use, to which she stipulated. The circuit court set a goal of reunification and found that DHS had made reasonable efforts. Macias was ordered to complete a drug-and-alcohol assessment, parenting classes, and a psychological evaluation upon her release from jail. She was also ordered to obtain and maintain appropriate housing, income sufficient to support the family, and reliable transportation. Regarding Parham, the order set out that the genetic test results were pending, but he would be permitted supervised visitation with MC; if Parham was found to be MC's father, he would be a nonoffending parent; and his services would otherwise be identical to Macias's.

On May 18, a review hearing was held. Parham was present. Macias was not. On June 8, a review order was entered finding Macias to be "totally noncompliant with the case plan and orders of the court," because she had not completed any parenting classes or attended any of her appointments for the outpatient classes. Although dates to visit MC were set up, Macias did not attend them or respond to DHS's efforts to contact her; she had tested positive for multiple drugs during the pendency of the case and refused to take drug screens on two separate occasions; and she had been arrested five times since the case was opened.

The circuit court found that Parham is MC's parent and that he had complied with the case plan. Parham was ordered to submit to a ninety-day hair-follicle test. The court also found that DHS had made reasonable efforts. The court concluded that MC should remain in the custody of DHS because Macias was unfit, and MC's health, safety, and welfare could not be protected if she were to be returned to her "parents." The court further concluded that continuation in DHS custody was in MC's best interest, necessary to protect her health and safety, and was the least restrictive alternative. The order continued the goal of reunification with respect to Parham and gave DHS discretion for a trial home placement with him. The court further ordered that DHS was permitted to pursue termination with respect to Macias. A simultaneous review hearing and termination hearing was set for September 7.

DHS filed a petition to terminate Macias's rights only on June 23 and sought authority to consent to adoption and permanent alternate placement of MC. DHS alleged two statutory grounds for termination: subsequent factors under Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)*(a)* (Supp. 2021) and aggravated circumstances under Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)*(a)*. In support of the subsequent-factors ground, DHS cited the incident that led to DHS taking custody of MC; Macias's previous history with DHS; the findings of the court at the review hearing; Macias's failure to make any progress in the instant case or any prior case despite the provision of numerous services throughout the instant case as well as the previous cases; and her two arrests since the May review hearing and her current incarceration. In support of the aggravated-circumstances ground, DHS pled that, given

4

Macias's total noncompliance with services and court orders, as well as her current incarceration, there was little likelihood that the continuation of services would result in successful reunification. The petition alleged that termination was in MC's best interest.

On September 7, a termination hearing was held regarding Macias, and a review hearing was held regarding Parham. Macias was present and represented by counsel, as was Parham. Also present were DHS counsel, MC's attorney ad litem MC's paternal grandmother, MC's foster parents, DCFS supervisor Pamela Feemster, and the primary caseworker, Brandy Ezell. A court report reflecting that Macias had not had stable housing, income, or transportation, and the previous court orders were entered into evidence.

Ezell testified as follows. She relayed the circumstances under which MC came to be in DHS custody. DHS had offered services to Macias, and she had completed "The Clock is Ticking" video and may have completed her drug-and-alcohol assessment, but she did not complete the recommended outpatient treatment or any other services. Macias tested positive for methamphetamine, amphetamines, THC, and "benzos" on December 17 and 28, 2021, and April 7, 2022, and she refused or could not produce a sample on January 3, April 20, and May 27, 2022. Macias would set up visits and then not show or respond to DHS's attempts to contact her, and she had not seen MC since she was taken into DHS custody. Macias had been charged with multiple crimes since the case was filed, had been incarcerated all but approximately two months since the case was opened, and was currently incarcerated and unable to make bond.

5

Ezell testified further that she had worked with Macias in the past regarding her other children, none of whom were in Macias's custody, and DHS has never had a case with Macias that resulted in a successful reunification. Macias had not complied, and it was in MC's best interest that Macias's rights be terminated because she had shown no progress toward reunification, and continuing services would be futile. Macias lacked housing, and at one point she was staying with a friend, but that place would not be appropriate for MC because Ezell saw drugs in the ashtrays when she visited there. Macias's continued drug use would be a safety risk to MC and indicated potential future harm.

Regarding Parham, Ezell testified that DHS was not asking for his rights to be terminated. He was offered services and was complying with the case plan and court orders. Parham has had four unsupervised overnight visits; they just started weekend visits, all of which have been going well. Parham's last hair-follicle test was negative for all drugs. The plan was to continue reunification services with Parham, have weekend visitation for the next three weekends, and if those went well, transition to a trial home placement. Parham is married to a woman named Sarah, and there were no issues with her.

At this point, DHS was not trying to place MC for adoption, because DHS was still working with Parham. However, if adoption became the goal, there would be no barriers to MC being adopted. DHS recommended continuing current services with Parham and terminating Macias's rights.

At the conclusion of Ezell's testimony, Macias moved to dismiss the petition, arguing that because DHS was not asking for MC to be adopted, it had not met its burden regarding

best interest. DHS responded that the court could still find that it was in MC's best interest to terminate because the statute merely required that the court consider the adoptability factor. Parham argued that his wife was willing, able, and intent on adopting MC later in the process. The court recognized that it had heard testimony that there was no barrier to MC being adopted and denied the motion. The court then received the ad litem's recommendation, which was termination of Macias's rights. The court recognized that it was somewhat unusual to terminate, given that the case was not yet a year old, but stated that the case had been open almost nine months, and Macias had not made any attempts at visitation with MC and had made "absolutely no progress."

On September 16, the order terminating Macias's rights was entered. The circuit court found by clear and convincing evidence that DHS had proved statutory grounds pursuant to Ark. Code Ann. § 9-27-341(b)(3)(B)(vii)(*a*), subsequent factors; and Ark. Code Ann. § 9-27-341(b)(3)(B)(ix)(*a*), aggravated circumstances. In support of the subsequent-factors ground, the court cited Macias's noncompliance with the case plan and court orders; drug use; frequent and nearly continual incarceration; complete failure to attend visitation with MC; failure to maintain housing, employment, and transportation; and her prior history with DHS. The court concluded that, in light of that, as well as Macias's incapacity or indifference to remedy the subsequent issues or factors or rehabilitate the circumstances that prevented placement of MC in her custody, continuing to provide services to Macias would not likely result in a successful reunification. In support of the aggravated-circumstances ground, the court cited Macias's failure to comply with the services or orders

7

of the court and her failure to make any progress toward reunification, her previous and current incarceration, and her history with DHS. The court concluded that her actions clearly demonstrated little likelihood that services to the family would result in a successful reunification. The court then found that the evidence proved that termination was in MC's best interest. In doing so, it found that although adoption was not the current plan in the case due to the ongoing case with Parham, there were no barriers to adoption. The court further found that returning MC to Macias's custody would subject her to potential harm, given that MC was nine months old, and Macias had not seen her since her birth; Macias's repeated criminal and drug issues in this case; her frequent and almost continual incarceration; and her total noncompliance and failure to progress. Regarding Parham, the court ordered that the permanency plan shall be reunification with him, given that he has complied with the case plan and orders of the case, having done everything that has been asked of him. The court also found that DHS had made reasonable efforts to finalize MC's permanency plan and had made reasonable and meaningful efforts to provide appropriate family services. This timely appeal followed.

II. *Applicable Law and Standard of Review*

Termination of parental rights is an extreme remedy and in derogation of a parent's natural rights. *Bentley v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 374, at 5, 554 S.W.3d 285, 289. However, the intent behind the termination-of-parental-rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home

8

cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3); *Lyall v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 81, at 15, 661 S.W.3d 240, 250. As such, parental rights will not be enforced to the detriment or destruction of the health and well-being of the child. *Bentley*, 2018 Ark. App. 374, at 5, 554 S.W.3d at 289.

To terminate parental rights, DHS must prove by clear and convincing evidence that a minimum of one statutory ground exists, and it is in the child's best interest to do so. Ark. Code Ann. § 9-27-341. Clear and convincing evidence is that degree of proof that will produce in the finder of fact a firm conviction of the allegation sought to be established. *Bentley*, 2018 Ark. App. 374, at 4–5, 554 S.W.3d at 289. In finding that termination is in the best interest of the child, the circuit court is required to consider the likelihood that the child will be adopted if the petition is granted and the potential harm to the health and safety of the child that might result from returning the child to the parent's custody. Ark. Code Ann. § 9-27-341(b)(3)(A). It is the overall evidence—not proof of each factor—that must demonstrate that termination is in the child's best interest. *Cole v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 481, at 9, 611 S.W.3d 218, 223. This court has held that other factors to be considered in making a best-interest finding may include preserving a child's relationship with a grandparent; the cessation of child support from a parent; if less drastic measures, such as a no-contact order or supervised visitation, may be used; if continued parental contact would be beneficial to the children if or when they are living with a relative and not in an

9

indeterminate state that is working against them; and whether the children are living in continued uncertainty. *Id.* at 11, 611 S.W.3d at 224.

The court is not required to find that actual harm would result or to affirmatively identify a potential harm. *Dowdy v. Ark. Dep't of Hum. Servs.*, 2009 Ark. App. 180, at 12, 314 S.W.3d 722, 728. The potential-harm evidence must be viewed in a forward-looking manner and considered in broad terms. *Samuels v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 527, at 5, 443 S.W.3d 599, 502. A parent's past behavior is often a good indicator of future behavior and may be viewed as a predictor of likely potential harm should the child be returned to the parent's care and custody. *Shawkey v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 2, at 6, 510 S.W.3d 803, 807. Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Lyall*, 2023 Ark. App. 81, at 15, 661 S.W.3d at 250. Moreover, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Id.*

Arkansas Code Annotated section 9-27-341(c)(2)(A) provides that "[t]ermination of the relationship between a juvenile and one parent shall not affect the relationship between the juvenile and the other parent if those rights are legally established." Moreover, "[a] court may terminate the rights of one parent and not the other parent if the court finds that it is in the best interest of the child." Ark. Code Ann. § 9-27-341(c)(2)(B).

We review termination-of-parental-rights cases de novo. *Dinkins v. Ark. Dep't of Hum. Servs.*, 344 Ark. 207, 40 S.W.3d 286 (2001). The appellate inquiry is whether the circuit

court's finding that the disputed fact was proved by clear and convincing evidence is clearly erroneous. *Shawkey*, 2017 Ark. App. 2, at 5, 510 S.W.3d at 806. In resolving the clearly erroneous question, we give due regard to the opportunity of the circuit court to judge the credibility of witnesses. *Bentley*, 2018 Ark. App. 374, at 5, 554 S.W.3d at 289.

### III. *Discussion*

Macias's stated point on appeal is that "DHS failed to present sufficient proof that termination was in [MC's] best interest when there was a lesser restrictive option to termination."[2] Yet within her argument, she contends that the "question presented to this Court is whether termination was in the juvenile's best interest where the evidence demonstrated that (1) [Macias] did not harm her child, and (2) [Macias] posed no danger to the child." She further argues that MC's need for stability and permanency was never at risk insomuch as Parham's rights were not being terminated, and DHS was continuing to work with him.

Macias's best-interest arguments on appeal are focused on a least restrictive alternative and whether she harmed or posed a danger to MC. However, Macias did not make those arguments to the circuit court. The failure to raise a challenge or obtain a ruling below is fatal to the appellate court's consideration of an issue on appeal. *Lamontagne v. Ark. Dep't of Hum. Servs.*, 2010 Ark. 190, 366 S.W.3d 351; *Burkhalter v. Ark. Dep't of Hum. Servs.*, 2010

---

[2]Macias does not challenge the circuit court's finding of statutory grounds for termination; therefore, any such challenge is waived. *Scott v. Ark. Dep't of Hum. Servs.*, 2021 Ark. App. 200, at 3, 624 S.W.3d 697, 699.

Ark. App. 520, at 4. The parent, as appellant, has the burden of bringing a record before this court sufficient to decide the issue presented. *See Burkhalter*, *supra.* Even in termination cases, this court will not address issues raised for the first time on appeal. *Tuck v. Ark. Dep't of Hum. Servs.*, 2014 Ark. App. 468, at 7, 442 S.W.3d 20, 24. Macias has never challenged any of the circuit court's prior reasonable-efforts findings, its prior finding that continuation in DHS custody was the least restrictive alternative, or the change of goal to termination of her rights coinciding with the continued goal of reunification with Parham. Moreover, at the termination hearing, the only argument Macias made was that DHS had not carried its burden of proof with respect to adoptability. Thus, the arguments advanced by Macias on appeal are not preserved for this court's review. As such, we affirm the circuit court's termination of her parental rights.[3]

Affirmed.

ABRAMSON and MURPHY, JJ., agree.

*K. Presley Turner*, for appellant.

---

[3]Assuming Macias had preserved her arguments, they would fail. There is ample evidence that it was in MC's best interest to terminate Macias's parental rights, and the cases she cites in support of her arguments are distinguishable, given that MC was still in the custody of DHS at the time of termination and had been placed in a foster home; it remained uncertain whether reunification with Parham would be achieved; there was no issue regarding the preservation of some other familial relationship that flowed from her; and no relatives had been approved for placement at the time of termination. *See, e.g., Thomas v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 457, at 7, 610 S.W.3d 688, 693 (citing *Dominguez v. Ark. Dep't of Hum, Servs.*, 2020 Ark. App. 2, 592 S.W.3d 723, for the proposition that where relatives have not been approved for placement and the children remained in foster care, the existence of potential relatives was not a basis to reverse a termination decision).

*Kaylee Wedgeworth*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.

*Dana McClain*, attorney ad litem for minor child.