Cite as 2023 Ark. App. 443

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-23-243

| | | |
|---|---|---|
| CRYSTAL JURLS | | Opinion Delivered October 4, 2023 |
| | APPELLANT | |
| V. | | APPEAL FROM THE COLUMBIA COUNTY CIRCUIT COURT [NO. 14JV-22-20] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | | HONORABLE DAVID W. TALLEY, JR., JUDGE |
| | APPELLEES | AFFIRMED |

**KENNETH S. HIXSON, Judge**

Appellant Crystal Jurls appeals after the Columbia County Circuit Court filed an order terminating her parental rights to her two children, Minor Child 1 (MC1) (DOB 04-19-18) and Minor Child 2 (MC2) (DOB 08-20-19). Appellant argues on appeal that (1) the circuit court lacked jurisdiction to terminate her parental rights as to MC2; (2) there was insufficient evidence to support the statutory grounds relied on by the circuit court; and (3) there was insufficient evidence for the circuit court to find that the termination of parental rights was in the children's best interest. We affirm.

I. *Relevant Facts*

On April 18, 2022, the Arkansas Department of Human Services (DHS) filed a petition for emergency custody and dependency-neglect asking the circuit court to find MC1 and MC2 dependent-neglected and to place them in DHS's custody. In the affidavit attached

to the petition, DHS stated that a seventy-two-hour hold was exercised over the children on April 14, 2022. DHS had received a referral regarding the children. It was alleged that the children were dirty, had bites that had become infected, lacked electricity and water in the home, and had been seen outside in the road without supervision. After an investigation, the family-service worker (FSW) saw red marks on MC2's legs and arms. MC2's teacher explained that MC2 would come to school with dirty clothes that smelled like mildew and had dried feces on him. The teacher further explained that the school has had to purchase clothing for the children and would bathe the children at school once or twice a week. Further, MC1 indicated that he was afraid of a man at his home because the man would hit him, his brother, and appellant and that there was no food at home. At the home, the FSW observed that there were piles of clothes on the floor; the refrigerator had a foul odor and had empty jugs inside; and the stove and kitchen counters had an excessive amount of clutter piled on top of them. Appellant admitted that there was no electricity in the home but that she would run an extension cord from her neighbor's home to access power. Although she had running water in the home at the time, there was no hot water. Appellant further refused to take a drug test after the FSW noticed a "pompom cigar wrapper" in the home. The children were removed on the basis of two safety-assessment factors: "Safety factors #7: Caretaker is unwilling or unable to meet the child's need for food, clothing, shelter, and/or medical or mental health care" and "Safety Factor #9: Child's physical living conditions are hazardous and immediately threatening, based on child's age and developmental status."

The circuit court granted the petition, finding that probable cause existed, and a probable-cause order was filed on May 9, 2022. Thereafter, an adjudication and disposition order was filed on June 3, 2022, finding MC1 and MC2 dependent-neglected. The circuit court found that the allegations in the petition were true and correct. It specifically found that the children were unclean at day care and did not have working utilities at home. The circuit court set the goal of the case as reunification with a concurrent goal of adoption and relative placement. Appellant was ordered to follow the case plan, obey court orders, and cooperate with DHS; obtain and maintain stable, clean, adequate, and suitable housing with utilities; obtain and maintain stable employment or otherwise provide adequate income to support the children; complete parenting classes; submit to random drug screens and test negative on all of them; complete a substance abuse assessment and follow recommendations; attend and participate in individual counseling; complete homemaker and budgeting services; and undergo a psychological evaluation.

On August 11, 2022, the circuit court filed a temporary custody order granting Dustin Hamilton, MC2's putative father, custody of MC2. A review hearing was held on August 5, 2022, and the circuit court filed a review order on August 17, 2022. After receiving the results from DNA testing, the circuit court adjudicated Dustin Hamilton to be MC2's legal father. The circuit court found that MC1 should remain in DHS custody and that MC2 should remain in Mr. Hamilton's custody. The circuit court continued the goals of the case. Regarding appellant's compliance, the circuit court made the following findings:

> Crystal Jurls has partially complied with the case plan and the orders of the Court. Specifically, not completed her psych eval, and has people leaving in and out of her

home.  She recently completed her assessment, has been attending counseling and has missed some visits.  Crystal Jurls has not demonstrated progress towards the goal of the case plan.

Another review hearing was held on November 4, 2022, and a written order was filed on November 16, 2022.  During that hearing, DHS provided several exhibits at that hearing that were filed in the court record, including a court report, a list of dates on which appellant either refused to take a drug test or tested positive for drugs, and a copy of appellant's psychological evaluation.  DHS indicated that appellant had refused several drug tests and tested positive for "Methamphetamine/Amphetamine" on August 16 and August 25, 2022, and for "Methamphetamine" on September 26, 2022.  The psychological evaluation stated the following conclusions:

> This is Ms. Jurls second time of being evaluated at this office and her oldest son was removed at that time and her current prognosis is guarded.  She does not appear capable of taking care of her children, based on the school report, her report of no electricity, no water (was getting it from the neighbor), her drug use with a limited time of sobriety, (she sees no reason to go to 12 step meetings), she lacks transportation, she has a history of problems with the law, is living with two men and a woman (it doesn't appear to be an acceptable environment for children).  She is receiving Social Security as she states she has been diagnosed with bipolar disorder and Borderline Personality disorder (also supported by testing today) and has not worked since she was 18 when she worked at Walmart.  She does not appear to be a healthy or appropriate role model for children, has poor judgment and does not appear capable of providing adequately for them.  It is recommended that her parental rights be terminated, and perhaps placing the children with family members as it does not appear to be in the best interest of her children to continue under her care.  She claims she only receives $880 a month which does not appear sufficient for her and two children.  She also is still at a high probability of substance use disorder based on testing.  Returning her children to her would likely be putting them in harm's way as her prognosis is guarded at best.

In its review order, the circuit court found that MC1 should remain in DHS custody and that MC2 should remain in Mr. Hamilton's custody.  The circuit court continued the

4

goals of the case. Regarding appellant's compliance, the circuit court found that appellant only partially complied with the case plan and that she had not demonstrated progress toward the goal of the case plan.

DHS filed a petition for the termination of parental rights on November 15, 2022, specifically alleging that appellant's parental rights should be terminated on the statutory grounds of aggravated circumstances and subsequent factors. *See* Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2023). A termination hearing was held on December 16, 2022.

At the beginning of appellant's termination hearing via Zoom, appellant stated that her vehicle was broken down on the side of the road and that she had retained a private attorney to represent her instead of her appointed counsel. The circuit court explained that the attorney she claimed to have retained had not entered a notice of appearance in the case. After further discussion, the circuit court called the attorney whom appellant claimed she had retained, and the circuit court was told that he had not been retained and therefore had not entered an appearance. The termination hearing proceeded with appellant represented by appointed counsel.

Roquayyah Blake, the caseworker assigned to the case, testified regarding the case history as already outlined above. She also testified about appellant's compliance during this case. Ms. Blake testified that appellant had not completed parenting classes; had made only twelve visits and missed seventeen visits with her children since the case had opened; and had failed to consistently maintain a clean and appropriate home. Ms. Blake explained that appellant's home did not have running water during the pendency of this case and that

appellant had even been "cited for stealing water while her water was turned off." The last time she was permitted in the home was on October 26, 2022. At that time, the home was in order. However, Ms. Blake attempted to see the home multiple times after that date, but appellant refused and offered Ms. Blake various excuses. Appellant completed a psychological evaluation, and Ms. Blake testified regarding the findings of the evaluation as already discussed above. Appellant refused multiple requests for drug screens and tested positive on the dates she did submit to drug screens. Appellant never had a negative drug screen during the pendency of this case. Ms. Blake acknowledged that DHS was seeking termination of appellant's parental rights before the expiration of a full year of services due to appellant's lack of progress and compliance with her case plan. She stated that appellant has not shown that she is willing or able to protect the children; she can or will provide suitable housing; she can remain drug-free to provide suitable care for the children; or she is willing and able to meet the children's needs for food, clothing, and shelter. On cross-examination, Ms. Blake admitted that appellant had a prior DHS case that concerned MC1 and that appellant was able to "resolve those issues previously and regain custody of [MC1]."

Haley Callison, an adoption specialist for DHS, testified that she ran a data match for the children "together[,]" which identified 138 potential families willing to adopt the children as a sibling group and 213 potential families interested in adopting MC1. She also stated that a specific family had also expressed an interest in adopting MC1. When asked about whether there is anyone who would be interested in having either permanent custody of or adopting MC2, Ms. Callison testified that MC2 was with his biological father.

Appellant also testified at the hearing. She could not remember the last time she attended a parenting class but claimed that she was still trying to complete the classes. She admitted that she could not remember the exact number of visits she missed with her children but thought seventeen visits had sounded correct. Appellant testified that she thought she had sufficient income and now had a home with working utilities. Appellant denied that she was using methamphetamine or anything that would be considered an illegal substance. Appellant believed her home was safe for the children and that she was able to keep them safe. As such, she did not feel that it was in the children's best interest to terminate her parental rights. At the conclusion of the termination hearing, the circuit court orally ruled from the bench that it was granting DHS's petition for termination of parental rights. On the same day, following the termination hearing, the circuit court also orally ruled that MC2 be placed in Mr. Hamilton's permanent custody.

Despite the circuit court's oral ruling that it was terminating appellant's parental rights and that MC2 be placed in Mr. Hamilton's permanent custody on the same day, we inexplicably have three separate orders that were filed on different dates memorializing the circuit court's oral rulings. The first order filed on January 6, 2023, awarded Mr. Hamilton permanent custody of MC2. The circuit additionally stated that it "hereby closes its case as to [MC2] and no further reviews shall be conducted in this matter as to [MC2]." It further provided that the "Order of Permanent Custody shall remain in effect until the entry of further orders of this Court or a court of competent jurisdiction and this matter is subject to being reopened for enforcement or modification."

The second order, filed on January 17, 2023, found that it was in the best interest of MC2 that his name be changed. It directed that Mr. Hamilton's name be listed as MC2's father on the birth certificate. It additionally directed that appellant's name shall no longer appear on the birth certificate because her parental rights had been terminated.

Finally, seconds after the second order was filed, the circuit court filed a written order terminating appellant's parental rights on January 17, 2023. The circuit court specifically found by clear and convincing evidence that the aggravated-circumstances ground alleged in the petition against appellant supported termination and that it is in the best interest of the children to terminate appellant's parental rights. Relevant to appellant's points on appeal, the circuit court made the following specific findings:

> 7. Specifically, the Department showed that [MC1] and [MC2] were removed from the custody of Crystal Jurls on April 14, 2022, placed in the Department's custody on April 20, 2022, probable cause was found on April 20, 2022 and the children were adjudicated dependent-neglect on May 20, 2022. Original concerns that caused the case to open have not adequately been addressed, Crystal Jurls' income and housing. Crystal Jurls allowing people to live in the home and be around that she should not be associating with, specifically associating with felons. Crystal Jurls talks about being reliant on a tax return from 2021 that still has not come to take care of court obligations and come up with money for rehab she is supposed to attend in a few weeks. Crystal Jurls failed to exercise visits, missing a large number of visits. The Court acknowledges that Crystal Jurls completed her psychological evaluation but the recommendations in the evaluation do not bode well for reunification as issues raised have not been addressed. Crystal Jurls has an order of protection against Curtis Carroll, asked that it be set aside to give her a break from her kids, meaning she would allow a man that was abusive to her to provide care for the children. Nothing from Crystal Jurls' counselor makes the Court feel that things will get better. Crystal Jurls is not cooperative to allow home inspections or random drug screens. Crystal Jurls is not credible in her testimony that conflicts with Ms. Blake's testimony. Crystal Jurls stated she had retained private counsel, but the Court called this attorney and he informed the Court that he had not been retained.

8

8. The Court finds by clear and convincing evidence that it is in the best interest of the juveniles to terminate parental rights of the juveniles to terminate parental rights of Crystal Jurls. In making this finding, the Court specifically considered: (A) the likelihood that the juveniles will be adopted if the termination petition is granted, specifically the Department proved that children are adoptable based upon the testimony; and (B) the potential harm on the health and safety of juveniles caused by returning the juveniles to the custody of Crystal Jurls. The Court is not convinced that Crystal Jurls will not continue to associate with the same individuals she did during the case and she has manifested an incapacity to remedy the issues that caused removal demonstrate how [MC1] and [MC2] would be at risk of potential harm if returned to Crystal Jurls.

9. As such, the Court grants the Petition of the Department of Human Services and hereby terminates all parental rights between Crystal Jurls and her children. Any prior orders directing Crystal Jurls to pay on-going child support on behalf of the juveniles shall cease upon entry of this order.

This appeal followed.

## II. *Standard of Review*

A circuit court's order terminating parental rights must be based upon findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3) (Supp. 2023). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Health & Hum. Servs.*, 370 Ark. 500, 262 S.W.3d 159 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.* A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to judge the credibility of witnesses. *Id.*

9

In order to terminate parental rights, a circuit court must find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii). The order terminating parental rights must also be based on a showing of clear and convincing evidence as to one or more of the grounds for termination listed in section 9-27-341(b)(3)(B). However, only one ground must be proved to support termination. *Reid v. Ark. Dep't of Hum. Servs.*, 2011 Ark. 187, 380 S.W.3d 918.

The intent behind the termination-of-parental rights statute is to provide permanency in a child's life when it is not possible to return the child to the family home because it is contrary to the child's health, safety, or welfare, and a return to the family home cannot be accomplished in a reasonable period of time as viewed from the child's perspective. Ark. Code Ann. § 9-27-341(a)(3). Even full compliance with the case plan is not determinative; the issue is whether the parent has become a stable, safe parent able to care for his or her child. *Cobb v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 85, 512 S.W.3d 694. Moreover, a child's need for permanency and stability may override a parent's request for additional time to improve the parent's circumstances. *Id.* Finally, a parent's past behavior is often a good indicator of future behavior. *Id.*

III. *Jurisdiction*

10

Before addressing the merits of this case, we must first address appellant's jurisdictional argument. Citing *Young v. Arkansas Department of Human Services*, 2012 Ark. 334, appellant argues that the circuit court lost jurisdiction to terminate her parental rights when it granted permanent custody of MC2 to his father and closed his portion of the case. In *Young*, an earlier dependency-neglect action had been closed in 2009 when the juvenile court placed the child in the permanent custody of the Sextons with visitation to the mother. In 2011, the Sextons filed an emergency ex parte petition to modify the mother's visitation, using the same case name and number from the closed dependency-neglect action. The juvenile court reopened the case and decided the custody issue in a "permanency-planning" format, although it was not a dependency-neglect matter. Although the issue does not appear to have been argued by the parties in that case, the supreme court held that the circuit court erred in applying the Juvenile Code because the dependency-neglect case had been resolved, the action had been terminated, and the case could not be reopened. *Id.* Noting, however, that the juvenile division is a circuit court—and therefore a trial court of general jurisdiction— with jurisdiction to hear a general child-custody case, the *Young* court decided the merits of the appeal. *Id.*

Appellant acknowledges in her brief "that the *Young* court determined that it was not reversible error for the circuit to exercise jurisdiction as the circuit court was a court of general jurisdiction and had the authority to determine the merits of the case." However, appellant attempts to distinguish *Young* by stating that "a new pleading had been filed to reopen the matter" in *Young* and that no such pleading was filed in this case. Appellant

11

agrees that the circuit court orally ruled that it was terminating her parental rights on December 16, 2022; however, she explains that the circuit court filed the order placing permanent custody of MC2 and closing the case as to MC2 eleven days before the order terminating parental rights was filed. She argues that because no new pleadings were filed to reopen the case after the permanent custody order was filed or any subsequent motion for "the circuit court to act as it relates to MC2," the circuit court "had no authority to enter an order terminating [her] rights to MC2 as his case was closed." We disagree under the particular circumstances presented in this case.

In *Abram v. Arkansas Department of Human Services*, 2016 Ark. App. 437, 502 S.W.3d 563, this court discussed the holding in *Young*. In *Abram*, a dependency-neglect case was opened and subsequently closed after the children successfully achieved reunification with their mother. Less than a month after the case had been closed, the mother was arrested on drug-related charges, and DHS filed a petition for emergency custody and dependency-neglect under the same docket number of the case that the court had closed the month before. Eventually, a termination hearing was held, and at the close of the hearing, the mother orally moved to dismiss the termination proceeding on the basis that DHS had erroneously filed the case under the same docket number as a closed dependency-neglect action. The circuit court denied the motion and terminated the mother's parental rights.

In the *Abram* appeal, the mother repeated her argument that the termination proceeding should have been dismissed and cited *Young* for support. We disagreed and provided the following analysis:

12

Appellant's reliance on *Young* is misplaced. The facts in this case are very different from the facts before the court in *Young*. Here, the dependency-neglect action had been closed for less than a month when the new petition for emergency custody and dependency neglect was filed, not two years later as in *Young*. Second, the new petition in this case was not a general-custody matter but a dependency-neglect petition, exactly the type of case heard in juvenile court. Appellant admits that the circuit court in this case had jurisdiction over the matter. Appellant argues, relying on *Young*, that the court improperly exercised its jurisdiction and thus that the trial court erred in not dismissing the case.

We recognize that the supreme court held in *Young* that the circuit court erred in reopening the two-year-closed dependency-neglect case to entertain a petition for modification of visitation. We do not interpret the court's opinion, however, as forbidding the reopening of a closed dependency-neglect case in all circumstances, nor do we discern that the court offered a remedy for any alleged error in doing so. Indeed, in *Young*, where the court specifically held that the circuit court erred in reopening the case, the court then decided the merits of the appeal.

Accordingly, in this dependency-neglect case—decided on its own merits, occurring less than a month after the initial dependency-neglect case had been closed, and over which the juvenile court clearly had subject-matter jurisdiction—we hold that the court did not err in denying appellant's motion to dismiss.

*Abram*, 2016 Ark. App. 437, at 4–5, 502 S.W.3d 566–67 (footnote omitted).

Similarly, we hold that appellant's argument lacks merit and note that the facts of this case are very different from those even in *Young* and *Abram*. Here, despite the circuit court's oral ruling that it was terminating appellant's parental rights and that MC2 be placed in Mr. Hamilton's permanent custody on the same day, the two orders memorializing the circuit court's oral rulings were inexplicably separated by eleven days. In fact, had the orders been filed at the same time or if the termination order was filed first as was perhaps contemplated by the circuit court, this would not be an issue. Nevertheless, the first written order awarded Mr. Hamilton permanent custody of MC2 and additionally stated that it "hereby closes its case as to [MC2] and no further reviews shall be conducted in this matter as to [MC2]." It

13

further provided that the "Order of Permanent Custody shall remain in effect until the entry of further orders of this Court or a court of competent jurisdiction and this matter is subject to being reopened for enforcement or modification." We cannot read the circuit court's order to mean that it was no longer finding that appellant's parental rights should be terminated and that it was instead closing the case completely. In fact, the original dependency-neglect case remained opened. Therefore, it was unnecessary for additional pleadings to be filed to "reopen" the case when the court had already held a hearing and announced its findings that simply needed to be memorialized in a written order. The circuit court clearly had subject-matter jurisdiction to enter the termination order as both *Young* and *Abram* make clear. Thus, under the circumstances before us, we cannot hold that the circuit court lacked authority to enter the termination order.

## IV. *Statutory Grounds*

The circuit court granted the termination petition on the aggravated-circumstances ground for termination under Arkansas Code Annotated section 9-27-341(b)(3)(B). Appellant argues that the circuit court erred in terminating her parental rights because there was insufficient evidence to support any of the grounds alleged in the petition to terminate parental rights. She argues that she was working towards reunifying with her children, and the fact she was previously able to reunify in a prior case demonstrates that further services

would result in a successful reunification this time as well. We cannot agree and hold that there was sufficient evidence to support the aggravated-circumstances ground.

Arkansas Code Annotated section 9-27-341(b)(3)(B) defines the aggravated-circumstances ground as follows:

(ix)*(a)* The parent is found by a court of competent jurisdiction, including the circuit court juvenile division, to:

. . . .

(3)(A) Have subjected any juvenile to aggravated circumstances.

(B) "Aggravated circumstances" means:

(i) A juvenile has been abandoned, chronically abused, subjected to extreme or repeated cruelty, sexually abused, or a determination has been or is made by a judge that *there is little likelihood that services to the family will result in successful reunification*;

(Emphasis added.)

From the evidence presented at the termination hearing, despite DHS offering appellant services, appellant refused to attend parenting classes; she inconsistently attended her visits; she was arrested for stealing water; she moved a sex offender into her home; her home remained environmentally inappropriate during the pendency of this case; she refused or avoided home visits; and she avoided or tested positive on drug screens. In fact, appellant never had a negative drug test during the eight months the case was opened. Much of this evidence was also admitted by appellant during her psychological evaluation, and the therapist who conducted her psychological evaluation even recommended termination. Given appellant's failure to cooperate and comply with the case plan, and under these facts,

15

we cannot hold that the circuit court clearly erred in its findings and affirm the circuit court's aggravated-circumstances finding.

## V. *Best Interest*

In determining whether termination is in the best interest of a child, the circuit court must consider the entire history of the case and all relevant factors in the case, including the likelihood that the child will be adopted and the potential harm that would be caused by returning the child to the custody of the parent. *Foster v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 418, 559 S.W.3d 762. Adoptability and potential harm, however, are merely two factors to be considered and need not be established by clear and convincing evidence. In *Phillips*, we stated that some of the

> [c]onsiderations in making a best-interest finding may include: the preservation of the children's relationship with a grandparent; the severance of child support from a parent; whether a less drastic measure could be employed such as a no-contact order or supervised visitation; whether continued contact with the parent would be beneficial to the children if or when the children are living with a relative and not in an indeterminate state that is working against them; and whether the children are living in continued uncertainty.

*Phillips v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 383, at 12, 585 S.W.3d 703, 709–10.

Appellant argues that there was insufficient evidence for the circuit court to find that termination of parental rights was in the children's best interest. Regarding MC2, she more specifically argues that the "circuit court erred when terminating her parental rights to MC2 as termination was unnecessary as MC2 had achieved permanency through the lesser restrictive means of custody with his father." She argues that she did not pose a danger to MC2, that she was partially complying with the case plan and simply needed more time, that

16

she did not physically harm MC2, that there was no expectation that MC2 would be adopted because he had been placed with his father, and that "best interests were not served by terminating [her] parental rights and forever severing the mother and child relationship."

Appellees argue in their responsive brief that these specific arguments regarding MC2 are not preserved because appellant failed to raise them to the circuit court or obtain a ruling below, and we agree. *Macias v. Ark. Dep't of Hum. Servs.*, 2023 Ark. App. 230. However, even if these arguments were preserved, they are meritless. Appellant analogizes this case to the facts in *Caldwell v. Arkansas Department of Human Services*, 2010 Ark. App. 102, and *Lively v. Arkansas Department of Human Services*, 2015 Ark. App. 131, 456 S.W.3d 383, both of which involve a similar factual situation of termination of a father's parental rights with the child or children remaining in the care of the mother. In *Caldwell*, *supra*, this court concluded that, because the child remained in the permanent care of her biological mother, termination of the father's parental rights would not achieve permanency, which is the goal of the statute. Moreover, other factors, including preservation of the child's relationship with her paternal grandparents and the lack of any evidence that the father had physically abused or harmed the child, weighed against termination. In *Lively*, *supra*, we found error in the circuit court's best-interest determination because there was no evidence of adoptability. In addition, we noted that terminating the father's parental rights jeopardized the children's relationship with their paternal grandparents as well as the financial support that the father might provide to the children. *Id.*

17

The circumstances here, however, are not like those in *Caldwell* or *Lively*. In both cases, this court held that termination of a father's parental rights was not in the children's best interest, in large part due to close relationships between the children and their paternal grandparents. In both *Caldwell* and *Lively*, the circuit court had determined that the paternal grandparents were the most stable influences in the children's lives. We held that termination of the father's rights in those cases endangered these significant, stabilizing relationships. *Caldwell*, 2010 Ark. App. 102, at 7; *Lively*, 2015 Ark. App. 131, at 8, 456 S.W.3d at 388. Here, there is no evidence that MC2 had a significant relationship with his maternal grandparents or any family on the mother's side, and appellant does not argue such on appeal. Therefore, the grandparent relationships that were a factor in *Caldwell* and *Lively* are not a concern here.

Additionally, a court may terminate the rights of one parent and not the other parent if the court finds that it is in the best interest of the child. Ark. Code Ann. § 9-27-341(c)(2)(B). A juvenile's need for permanency and stability overrides a parent's request for additional time to improve circumstances, and courts will not enforce parental rights to the detriment of the well-being of the child. *Dean v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 286, 600 S.W.3d 136. The intent of the termination statute is to provide permanency in the juvenile's life in all circumstances where a return to the parent is contrary to the juvenile's health, safety, or welfare and cannot be accomplished in a reasonable period of time as viewed from the juvenile's perspective. *Id.* Here, we believe the facts are more like those in *White v. Arkansas Department of Human Services*, 2018 Ark. App. 459, 558 S.W.3d 423, and

18

*Bobbitt v. Arkansas Department of Human Services*, 2022 Ark. App. 355. In both of these one-parent termination cases, we held that the record supported the circuit court's best-interest findings despite similar arguments because the mother's instability would subject the children to potential harm if ever returned to them. Here, it was clear that appellant had failed to follow court orders or the case plan, had not successfully addressed her drug-abuse issues, and her living situation was not appropriate during much of this case. The fact that MC2 is not up for adoption, standing alone, does not preclude this court from affirming the potential harm the parent poses. *Foster*, *supra*. Adoptability is only one factor to be considered. *White*, *supra*. Thus, on this record we cannot say that the circuit court clearly erred.

Appellant additionally argues that the evidence failed to establish that she posed such potential harm that would warrant terminating her parental rights to both children. She argues that she was working on the case plan, had a home, completed a psychological evaluation, and was working toward receiving substance-abuse treatment. She complains that she had not been given the benefit of a full year of services before her parental rights were terminated. She argues that "flawless compliance" is not necessary and that she should have been given more than the eight months to achieve reunification. These arguments also lack merit.

In this case, the circuit court had ample evidence of potential harm to support its best-interest finding. Appellant's home remained environmentally inappropriate during the pendency of this case; she refused or avoided home visits; and she avoided or tested positive

on drug screens. In fact, appellant never had a negative drug test during the eight months the case was opened. A parent's continued illegal drug use and instability are sufficient to demonstrate a risk of potential harm to the children. *Lloyd v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 461, 655 S.W.3d 534. Additionally, we have explained that the lack of time to complete appropriate services is irrelevant to the circuit court's determination of best interest. *Id.* DHS is not required to provide services under the analysis of potential harm. *Id.* Appellant essentially asks us to reweigh the evidence and second-guess the circuit court's credibility determinations, which we decline to do here. *See Gibby v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 146, 643 S.W.3d 794. Appellant's behaviors over the course of the entire case as outlined above do not show enough stability to render the circuit court's finding that appellant posed a risk of potential harm to the children clearly erroneous. Thus, under these facts, we cannot say that the circuit court clearly erred when it determined that terminating appellant's parental rights was in the children's best interest. Accordingly, we affirm the order terminating appellant's parental rights.

Affirmed.

ABRAMSON and VIRDEN, JJ., agree.

*Tabitha McNulty*, Arkansas Commission for Parent Counsel, for appellant.
*Ellen K. Howard*, Ark. Dep't of Human Services, Office of Chief Counsel, for appellee.
*Dana McClain*, attorney ad litem for minor children.